**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

REPAIRIFY, INC., doing business as Collision
Diagnostic Services, a Delaware corporation,

    Plaintiff,

v.                              Case No.: 3:16CV984-J-34JRK

AIRPRO DIAGNOSTICS, LLC, a Florida limited
liability company, CHARLES OLSEN, and
WILFREDO RODRIGUEZ,

    Defendants.
_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO REPAIRIFY'S MOTION FOR PRELIMINARY INJUNCTION

Defendants, pursuant to this Court's Order (Doc. 42), hereby file this Response in Opposition to Repairify's Motion for Preliminary Injunction (Doc. 41) (the "Motion") and the affidavits attached hereto as Exhibits 1 - 4. Defendants state as follows:

### PRELIMINARY STATEMENT

Plaintiff is seeking a preliminary injunction preventing both Defendants Olsen and Rodriguez from competing against Plaintiff in the United States for two years from the date of entry of the injunction. (Doc. 41, Ex. 6). What Plaintiff is really seeking is to prevent AirPro Diagnostics, LLC ("Air Pro"), from competing with Plaintiff in the U.S. marketplace. Seeking an injunction in order to prohibit legitimate competition amongst businesses is inconsistent with Florida law encouraging competition in the marketplace. Univ. of Fla. v. Sanal, 837 So. 2d 512, 515 (Fla. 1st DCA 2003); see also Colucci v. Kar Kare Auto Group, Inc., 918 So. 2d 431, 440 (Fla. 4th DCA 2006) (providing that an agreement whose sole purpose is to prevent competition per se is void as a matter of public policy). For the following reasons, Plaintiff's Motion should be denied.

## BACKGROUND

Olsen and Rodriguez were both employees of Plaintiff. Olsen Aff. ¶7-9, 15, 47; Rodriguez Aff. ¶6, 22, 23, 25, 27, 28). Olsen was only an employee of Plaintiff for less than four months (Olsen Aff. ¶47) and Rodriguez was an employee of Plaintiff for about twelve months (Rodriguez Aff. ¶ 15, 28). Olsen and Rodriguez signed the documents attached as Exhibits 1(A) and 1(B) to Plaintiff's Motion (hereinafter the "Employment Agreement", singularly, and "Employment Agreements" collectively). Each Employment Agreement includes covenants regarding confidentiality, soliciting employees, and competing against Plaintiff. (Doc. 41, Ex.1(A) (hereinafter the "Restrictive Covenants"). Both Olsen and Rodriguez dispute the validity and enforceability of the Employment Agreements and the Restrictive Covenants.

Contrary to Plaintiff's Motion, Rodriguez is not an employee of AirPro. (Margol Aff., ¶18, 35; Rodriguez Aff. ¶39-40). Olsen, on the other hand, is a current employee of AirPro. (Margol Aff., ¶34; Olsen Aff. ¶75). Prior to Olsen's employment with Plaintiff, Olsen worked in the automotive industry for over 35 years (Olsen Aff., ¶4-6) and he specifically worked in the automotive remote scanning and diagnostics industry for numerous years (Olsen Aff., ¶5-8). During that time, Olsen gained _extensive_ experience in automotive diagnostics, programming and remote services. (Olsen Aff., ¶5-9).

Prior to Rodriguez's employment with Plaintiff, Rodriguez worked in the automotive industry for 27 years (Rodriguez Aff., ¶4)  He specifically worked in the automotive remote scanning and diagnostics industry for over 3 ½ years (Rodriguez Aff., ¶6). During that time, Rodriguez also gained _extensive_ experience in automotive diagnostics. (Rodriguez Aff., ¶7).

Olsen and Rodriguez were both employees of AES Technologies, LLC ("AEST"), Automotive Electronic Solution Providers, LLC ("AESP") and Collision Diagnostic Services

("CDS"). (Margol Aff., ¶17-18; Olsen Aff., ¶6, 9; Rodriguez Aff., ¶5, 8, 10). However, contrary to the assumptions alleged in Plaintiff's Motion (Doc. 41, ¶¶12, 30 and 39) and the Affidavit of Douglas Kelly (Doc. 41, Ex. 1, ¶7, 28) neither Olsen nor Rodriguez had employment or noncompetition agreements with AEST, AESP or CDS. (Margol Aff., ¶19-23; Olsen Aff., ¶9; Rodriguez Aff., ¶10). As such, Plaintiff's statement that Plaintiff "purchased AEST's employment agreements with its employees, including Olsen and Rodriguez" (Doc. 41, ¶12; Doc. 41, Ex.1, ¶7) is false and extremely misleading.[1] The only employment agreements that Olsen or Rodriguez had are the Employment Agreements with Plaintiff.

Plaintiff obtained the assets of AEST and AESP in July of 2015. However, Defendants expressly dispute that Plaintiff obtained any employment agreements relating to Olsen and Rodriguez because neither Olsen nor Rodrigues had an employment agreement with AEST, AESP or CDS. (Margol Aff., ¶19-23; Olsen Aff., ¶9; Rodriguez Aff., ¶10).

Further, the AirPro device was created by non-parties to this action in 2014 and 2015 and neither Olsen nor Rodriguez were involved in the design, engineering, development or manufacturing of the AirPro device. (West Aff. ¶6, 7, 10-12; Margol Aff. ¶29, 30, 33). In fact, all development and manufacturing of the AirPro is performed by a non-party, CompuFlash, which is located in Margate, Florida. (West Aff. ¶10).

Additionally, as explained in Olsen's Affidavit, Plaintiff was the first party to breach its Employment Agreement with Olsen. (See Olsen Aff. ¶29-58). Plaintiff, without cause, terminated Olsen's employment after Olsen had questioned Plaintiff about its handling of an employee which Olsen believed had been accessing child pornography during his work day with Plaintiff. (Id.). Plaintiff alleges that it terminated Olsen's employment because Olsen had

---

[1] The undersigned is not insinuating that Plaintiff's counsel intended to mislead the Court. Rather, it is necessary to clarify for the Court that Olsen and Rodriguez did not have employment agreements or noncompetition agreements with AEST, AESP or CDS.

3

requested to be compensated for moving from Jacksonville to Plaintiff's newly opened office in Texas. (Olsen Aff. ¶58, Ex.1(F)). Neither reason for Plaintiff terminating Olsen's employment is justified and constitutes a material breach of the Employment Agreement by Plaintiff. As will be demonstrated below, Plaintiff's breach of its Employment Agreement with Olsen allows Olsen to treat the Employment Agreement as having been terminated. Olsen is thus released from the noncompetition and other terms of such Employment Agreement.

Moreover, Olsen and Rodriguez expressly dispute that Plaintiff has met its burden to obtain a preliminary injunction. However, as an alternative, if this Court finds that Plaintiff has met its burden, this Response, along with Exhibits 1 - 4 directly refute Plaintiff's Motion and are sufficient for this Court to find that Plaintiff is not entitled to a preliminary injunction.

## ARGUMENT

### I. Standard for Preliminary Injunctions.

Rule 65, F.R. Civ. P., governs this Court's determination of whether the Court may grant Plaintiff a preliminary injunction. See Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11th Cir. 1991); Fed. R. Civ. P. 65 (2017). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless [Plaintiff] clearly establishe[s] [its] burden of persuasion as to each of the four prerequisites." Ferrero, 923 F.2d at 1448 (citation omitted) (internal quotation marks omitted). The granting of a preliminary injunction "is the exception rather than the rule, and [P]laintiff must clearly carry the burden of persuasion." Id. (emphasis added) (citation omitted) (internal quotation marks omitted).

This Court may grant injunctive relief **only** if Plaintiff establishes:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage

4

> the proposed injunction may cause the opposing party; **and** (4) if issued, the injunction would not be adverse to the public interest.

Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (emphasis added) (citations omitted).

Plaintiff cannot meet its burden of establishing each of the above four prerequisites.

## II.      **Plaintiff does not have a substantial likelihood of success on the merits.**

Plaintiff's Motion must be denied because Plaintiff does not have the required substantial likelihood of success on the merits necessary for a preliminary injunction. A preliminary injunction requires Plaintiff to establish the substantial likelihood of success on the merits by demonstrating a *prima facie*, clear right to the relief requested. City of Jacksonville v. Naegele Outdoor Advertising, Co., 634 So. 2d 750, 754 (Fla. 1st DCA 1994). In the event that there is any dispute as to the rights of the parties, a motion for preliminary injunction should be denied. Colucci, 918 So. 2d at 440. Plaintiff cannot show a substantial likelihood of success on any of its claims that would justify injunctive relief.

### A. **Plaintiff does not have any legitimate business interests that justify enforcing the Restrictive Covenants of the Employment Agreement.**

Plaintiff's Motion alleges that there are only three legitimate business interests that justify enforcing the Restrictive Covenants of the Employment Agreement, to wit:

1) Repairify's trade secrets and other valuable non-public confidential business information to which Olsen and Rodriguez were privy in performing their Repairify employment duties (Doc. 41, ¶18(a));

2) Repairify's substantial relationships with prospective and existing customers, with whom Rodriguez (as to existing customers) and Olsen had substantial contact (Doc. 41, ¶18(b)); and

3) Olsen and Rodriguez's extraordinarily specialized training and knowledge about how to deliver the diagnostic and programming services for vehicle enduser repair facilities (customers) throughout the United States (Doc. 41, ¶18(c)).

Plaintiff has not met its burden to establish any of these three alleged business interests.

5

      i.    <u>Trade Secrets and other valuable non-public confidential business information</u> (Doc. 41, ¶¶18(a), 19-38).

Plaintiff alleges that it possess trade secrets and other confidential business information. However, Plaintiff has failed to prove that Olsen or Rodriguez are using any of Plaintiff's alleged confidential information at their new jobs. <u>Dyer v. Pioneer Concepts</u>, 667 So. 2d 961, 965 n.2 (Fla. 2d DCA 1996) ("It is not enough that the former employee knew confidential information; the former employer must prove that the employee is using the information in his or her new job.") (citing <u>Sabina v. Dahlia Corp.</u>, 650 So. 2d 96 (Fla. 2d DCA 1995)).

Additionally, Plaintiff failed to allege what specifically, other than the patented product (which such patent is publicly available), constitutes a trade secret or confidential information. Plaintiff only makes generalized conclusory statements referencing "systems" or "methods" or "computer programming." (<u>See</u> Doc. 41, ¶ 30). This is insufficient as a matter of law. <u>Gould & Lamb, LLC v. D'Alusio</u>, 949 So. 2d 1212, 1214 (Fla. 2d DCA 2007) (noting that general statements cannot be substituted as proof in an action to enforce a restrictive covenant); <u>Passalacqua v. Naviant, Inc.</u>, 844 So. 2d 792, 796 (Fla. 4th DCA 2003) (providing that a legitimate business interest was not proven where the moving party was unable to describe in detail its claimed trade secrets, such as the identities of customers solicited or how any activity, method or technique was proprietary). In Florida, a restrictive covenant can protect confidential business information <u>only to the extent</u> that the information to be protected is unique to the possessing party and is not commonly known throughout the industry. <u>Anich Indus., Inc. v. Raney</u>, 751 So. 2d 767, 771 (Fla. 5th DCA 2000) (finding that the legitimate business interests alleged by an employer were, at least in part, commonly known in the industry and not unique or confidential). Specifically, "[p]rotectable information includes that which is unique in the industry and is confidential." See <u>Colucci v. Kar Kare Automotive Group, Inc.</u>, 918 So. 2d 431,

6

439 (Fla. 4th DCA 2006) (quoting Keel v. Quality Medical Systems, Inc., 515 So. 2d 337 (Fla. 3d DCA 1987)).  Information that is widely known in an industry and is not unique to the party claiming injury, is not entitled to protection.  Id.

Information relating to the AsTech device is well-known in the community including CDS's other former employees who now work for AirPro.  (See Margol Aff. ¶16).  Further, AirPro's CEO, as one of the original developers of the AsTech device, already has all of the records and information relating to the AsTech and the technology and AirPro has not learned anything new from Olsen or Rodriguez.  (Margol Aff. ¶14, 16, 28).  In fact, both Olsen and Rodriguez attest to the fact that they did not receive confidential information from Plaintiff.  (See Olsen Aff. ¶63-65; Rodriguez Aff. ¶24-26).  It is difficult to comprehend how Olsen, who worked in the automotive industry for over 35 years and in the auto remote scanning industry for numerous years, and received no specialized training from Plaintiff, absorbed anything new from Plaintiff in Olsen's less than 4 months of Plaintiff's employment.

Plaintiff has wholly failed to provide any evidence demonstrating that information provided to Olsen and Rodriguez by Plaintiff was unique and confidential to Plaintiff.  Instead, the alleged confidential information that may be possessed by Olsen and. Rodriguez is allegedly Plaintiff's pricing models and customer contacts.  Plaintiff completely failed to describe in any significant detail what allegedly makes Plaintiff's pricing models unique or confidential.  Moreover, Plaintiff failed to demonstrate that its "customer contacts" amount to a trade secret.  See infra Part II(A)(ii).  This is wholly inadequate to support Plaintiff's conclusory allegations that enforcing the Restrictive Covenants would protect Plaintiff's legitimate business interest in its own trade secrets and other valuable non-public confidential business information.

        ii.    Substantial relationships with prospective and existing customers (Doc. 41, ¶¶18(b), 36-37, 42)

Plaintiff's Motion, and the Affidavit of Douglas Kelly, contain conclusory statements alleging that Olsen and Rodriguez know Plaintiff's customer contacts (Doc. 41, ¶36) and that Olsen (in less than 4 months of Plaintiff's employment) and Rodriguez had substantial relationships with prospective and existing customers (Doc. 41, ¶18(b), 42; Doc. 41, Exhibit 1, ¶¶ 30). These are purely conclusory statements and do not contain any facts as to how Olsen or Rodriguez knew of Plaintiff's customer contacts or how either of them had substantial contacts with Plaintiff's customers. Conclusory statements without more are insufficient to support the enforcement of a restrictive covenant. Gould, 949 So. 2d at 1214. Both Olsen and Rodriguez had been employed in this industry for many years before their brief employment with Plaintiff and had preexisting and substantial knowledge of these same clients before their employment with Plaintiff. (See Margol Aff. ¶14, 16; Olsen Aff. ¶5-10, 63; Rodriguez Aff. ¶4-6, 24). Additionally, Section 542.335, F.S., only protects <u>substantial</u> relationships with specific prospective or existing customers. §542.335, F.S. (2016). Wholesale elimination of all competition is not permitted.

> Although the relevant statute does not define the criteria for substantial relationships, an analysis of Florida case law reveals that a substantial relationship is more likely to exist where there is active, on-going business being conducted with the alleged customer; exclusivity; a customer cannot be easily identified by other competitors in the industry; and an expectation of continued business [with the alleged customer].

IDMWORKS, LLC v. Pophaly, No. 16-20627-GOODMAN, 2016 U.S. Dist. LEXIS 82473 (S.D. Fla., June 23, 2016) (citing Evans v. Generic Sol. Eng'g, LLC, 178 So. 3d 114, 116-18 (Fla. 5th DCA 2015); Envtl. Servs., Inc. v. Carter, 9 So. 3d 1258, 1266 (Fla. 5th DCA 2009); Shields v. Paving Store Co., 796 So. 2d 1267, 1268-69 (Fla. 5th DCA 2001); Anich Indus., Inc., 751 So. 2d at 770-71. Plaintiff does not identify any of its specific customers with whom it alleges that Olsen or Rodriguez had a substantial relationship. The fact that Olsen or Rodriguez had contact with Plaintiff's customers does not rise to the level of substantial customer contact

required by the statute. See § 542.335 (requiring substantial customer contact).[2] Plaintiff's Motion on its face fails to provide facts supporting the substantial relationship necessary to protect a legitimate business interest. See Evans v. Generic Sol. Eng'g, LLC, 178 So. 3d 114, 116 (Fla. 5th DCA 2015) (reversing an injunction because the party did not have a substantial enough business relationship with a former customer to permit enforcement of a restrictive covenant).

Furthermore, Florida law provides that in order for a violation of § 542.33, F.S. to be actionable, the movant must specifically demonstrate that the former employee actually used the customer list to the movant's detriment. Sabina v. Dahlia Corp., 650 So. 2d 96, 99-100 (Fla. 2nd DCA 1995).

Florida law provides that customer lists do not qualify as trade secrets unless the employer presents evidence that the customer list is the product of great expense or effort, that they are distillations of larger lists, or that they include information not publicly available. See Pure Foods, Inc. v. Sir Sirloin, Inc., 84 So. 2d 51 (Fla. 1955); Harry G. Blackstone, D.O., P.A. v. Dade City Osteopathic Clinic, 511 So. 2d 1050 (Fla. 2d DCA 1987); Renpak, Inc. v. Oppenheimer, 104 So. 2d 642 (Fla. 2d DCA 1958); Templeton v. Creative Loafing Tampa, 552 So. 2d 288 (Fla. 2d DCA 1989). Additionally, Plaintiff must have taken steps to make its customer lists secret and to guard against disclosure. Blackstone v. Dade City Osteopathic Clinic, 511 So. 2d 1050, 1051 (Fla. 2d DCA 1987) (when no evidence that client names were secret and could not be obtained by other means, no protection afforded to list). None of this is established by Plaintiff. Erik Elec. Co. v. Elliot, 375 So. 2d 1136 (Fla. 3d DDCA 1979)

---

[2] The statutory requirement of proving substantial customer contact makes sense because otherwise all employers would try (similar to what Plaintiff is trying to do in the instant case) to prevent former employees from contacting all of the employer's customers including the customers with whom the employee may have had only minimal contact. This is particularly applicable in a service industry (like Plaintiff's) where customer contact is unavoidable.

(describing efforts and expenses necessary to sustain claim of customer list confidentiaility). In fact, Plaintiff publicly advertises the names of its customers on its website. (Margol Aff. ¶16, Ex.3(G); Olsen Aff. ¶63, Ex.1(G); Rodriguez Aff. ¶24, Ex.2(B)). Therefore, it is not reasonable to presume that Plaintiff has a legitimate business interest in protecting the names of it's customers.

                iii.    <u>Extraordinarily specialized training and knowledge</u> (Doc. 41, ¶¶18(c), 39)

Plaintiff's Motion alleges, in conclusory fashion, that Olsen and Rodriguez received "extraordinarily specialized training and knowledge about how to deliver the diagnostic and programming services for vehicle enduser repair facilities (customers) throughout the United States." (Doc. 41, ¶18(c)). Plaintiff also alleges that it bought the assets of AEST, which included the Olsen and Rodriguez employment contracts pursuant to which Olsen and Rodriguez gained extraordinary and specialized training. (Doc. 41, ¶39). Olsen and Rodriguez did <u>not</u> have employment contracts with AEST, AESP or CDS. (Margol Aff., ¶19-23; Olsen Aff., ¶9; Rodriguez Aff., ¶10). Plaintiff also glosses over the fact that Olsen and Rodriguez had significant knowledge, training and skills superior to that of Plaintiff <u>prior</u> to their employment with Repairify. (Olsen Aff. ¶4-10, 13-18; Rodriguez Aff. ¶4-8). Neither Olsen nor Rodriguez obtained any training or skills during their employment with Repairify. (Olsen Aff. ¶61-62; Rodriguez Aff. ¶22-23). Plaintiff is essentially alleging (without any legal or factual support) that Plaintiff is allowed to claim that the information Olsen and Rodriguez obtained while working for AEST, AESP and/or CDS <u>and not obtained while working for Plaintiff</u>, is protected information governed by the Restrictive Covenants. This is not a correct position of Florida law. The Restrictive Covenants do <u>not</u> define confidential information and do <u>not</u> state that the Employment Agreement included information that Olsen or Rodriguez obtained during their

10

employment prior to Plaintiff. Ambiguities are constructed against Plaintiff, as the drafter of the Employment Agreement. Florida law specifically provides that knowledge and skills obtained by an employee prior to working for a new employer cannot be restricted by the new employer. Hapney v. Central Garage, Inc., 579 So. 2d 127 (Fla. 2d DCA 1991), rev. den. 591 So. 2d 180 (Fla. 1991). In Hapney, an employee (Hapney) worked in various auto repair shops for seven years where he learned to install and repair auto air-conditioning systems. Id. at 128. Hapney subsequently obtained employment by a repair shop engaged in the installation, repair and maintenance of auto air conditioners and related auto accessories. Hapney had signed a confidentiality agreement and covenant not to compete with his prior employer. The prior employer sought to enforce the noncompete and the trial court entered a temporary injunction in favor of Hapney. Id. at 128-29. The issue on appeal was whether Hapney obtained extraordinary or specialized training while working for the employer such as would justify the enforcement of the noncompetition agreement. Id. at 131-32. The appellate court acknowledged that upon employment by the prior employer, Hapney was already thoroughly educated and knowledgeable in the installation and repair of automotive air conditioners. Id. at 132. However, during his employment with employer, Hapney acquired knowledge and skills necessary to install and repair cruise control units and cellular telephones. However, there was no evidence that Hapney received specialized training from the employer. Therefore, the appellate court reversed the preliminary injunction.

Furthermore, training only constitutes a legitimate business interest protectable by an injunction when the training rises to the level of being specialized or extraordinary. §542.335(1)(b)(5), Fla. Stat. (2016); Dyer v. Pioneer Concepts, Inc., 667 So. 2d 961, 963 (Fla. 2d DCA 1996); Hapney, 579 So. 2d at 132. "Training is classified as extraordinary when it exceeds

'what is usual, regular, common, or customary in the industry in which the employee is employed.'" Dyer, 667 So. 2d at 963; Hapney, 579 So. 2d at 132 ("The rationale is that if an employer dedicates time and money to the <u>extraordinary</u> training and education of an employee, whereby the employee attains a unique skill or an enhanced degree of sophistication in an existing skill, then it is unfair to permit that employee to use those skills to the benefit of a competitor when the employee has contracted not to do so."). Specialized and extraordinary training occurs in situations where an employee, at the prior employer's expense, has attended multiple lectures, seminars, instructional courses or the like pertaining to a specialized field or product. See, e.g., Milner Voice and Data, Inc. v. Tassy, 377 F. Supp. 2d 1209, 1218 (S.D. Fla. 2005) (holding that where an employer sent its employee to <u>many extended seminars</u> which provided the employee with specialized training on products, the employee received "specialized training"). (emphasis added).

In the instant case, Olsen and Rodriguez had obtained all of their training <u>prior</u> to their employment with Plaintiff. Plaintiff did not identify any seminars, lectures, instructional courses or specialized field or training courses to which Plaintiff sent Olsen or Rodriguez. Plaintiff did not identify any money that Plaintiff spent on training Olsen or Rodrigues. In fact, Plaintiff has totally failed to submit <u>any</u> evidence demonstrating that Plaintiff provided specialized or exceptional training to Olsen or Rodriguez. Therefore, Plaintiff does not have a legitimate interest in any training provided to, or knowledge obtained by, Olsen or Rodriguez.

> **B. The Restrictive Covenants are not reasonably necessary to protect any legitimate business interests alleged by Plaintiff.**

Plaintiff's Motion alleges only three business interests that Plaintiff is seeking to protect. None of Plaintiff's alleged interests constitute legitimate business interests enforceable under

Florida law or § 542.335,F.S..  Therefore, enforcement of the Restrictive Covenants is <u>not</u> necessary to protect any legitimate business interests alleged by Plaintiff.

### C.  The two year term of the non-compete is not reasonable.

Section 542.335, F.S., provides that a restrictive period less than six months is presumed reasonable while a restrictive period exceeding two years is presumed unreasonable. However, whether the length of the restriction is reasonable is a factual question based upon the details of the case at-hand.  In the instant case, the two year restriction in the Restrictive Covenants is an unreasonable restrictive period.  As admitted in Plaintiff's Motion, this case involves software programming and technological processes which facilitate communication between vehicle computers and computerized databases.  Technology and software is constantly evolving. Knowledge often becomes stale in a matter of months.  As such, a two year restrictive period is unnecessary to protect any alleged legitimate business interests that Plaintiff seeks to protect.

### D.  The geographic restrictions of the non-compete are not reasonable.

Plaintiff's Motion alleges that the Employment Agreements prohibit Olsen and Rodriguez from competing with Plaintiff throughout the entire U.S.. (Doc. 41, ¶47; Doc. 41, Ex. 6).  However, the non-compete provisions in the Employment Agreements <u>do not</u> provide for such an overly broad geographic area restriction.  Specifically, paragraph 2 of the Employment Agreement states that the restricted territory only "means anywhere in North Florida or where <u>Discover Technologies</u> [is] conducting business".  (emphasis added). (Doc. 41, Ex. 1(B)). Critically, AirPro Diagnostics does not have any customers within North Florida.  (Margol Aff. ¶36-37). Critically, Plaintiff does not define what it means by "North Florida".  What constitutes the northern portion of the state?  Is Plaintiff truly seeking to restrict Defendants in all of "North Florida" or only those portions of "North Florida" in which Discover Technologies conducts

business? If Plaintiff is attempting to enforce its alleged noncompete agreements in all of North Florida without regard to where Discover Technologies conducts business, then this provision is clearly overbroad. Additionally, Discover Technologies is a non-party, is no longer an active company and does not conduct any business. (Olsen Aff. ¶46, Ex.1(D)). The affidavits of Olsen and Rodriguez attest to the relationship between Repairify and Discover Technologies and why they both understood that Discover Technologies was included in the Employment Agreement. (See Olsen Aff. ¶23, 32, 39-45; Rodriguez Aff. ¶16-21).

In addition, the term "Discover Technologies, conducting business" is patently ambiguous. Discover Technologies is no longer an active company and does not conduct any business in North Florida or elsewhere. (Olsen Aff. ¶46, Ex.1(D)). Therefore, it is impossible to determine the geographic boundaries for the provision "Discover Technologies conducting business". Moreover, Plaintiff's argument that "Discover Technologies" appears to be a scrivener's error and that Plaintiff's name should appear in its place is made in vain. To the extent a mistake was made, that mistake is a unilateral mistake by Plaintiff (see Olsen Aff. ¶45; Rodriguez Aff. ¶21), which does not give rise to reformation of the Employment Agreement. See, e.g., Enterprise Leasing Co. v Demartino, 15 So. 3d 711 (Fla. 2d DCA 2009). Additionally, and critically, parole evidence is inadmissible to explain a patent ambiguity. Thompson v. Watts, 117 So. 3d 986, 989 (Fla. 1st DCA 2013). Olsen and Rodriguez clearly understood that they were only restricted to where Discover Technologies was conducting business. As such, there was no mutual mistake as is clearly required for the reformation of a document. Providence Sq. Ass'n, Inc. v. Biancard, 507 So. 2d 1366, 1369 (Fla. 1987); Horne v. Turner Cypress Lumber Co., 45 So. 2d 1016, 1017 (Fla. 1908).

If anything, all that existed was a unilateral mistake on Plaintiff's part for which Plaintiff will not be afforded relief. In BMW of North America Inc. v. Krathen, 471 So. 2d 585, 588 (Fla. 4th DCA 1985), the automobile manufacturer, in response to a suit claiming that it had sold claimant a $26,500 lemon, served an offer of judgment for $20,500. After claimant accepted, and judgment was entered for that amount, BMW sought relief under rule 1.540 to correct its mistake in failing to include the return of the vehicle as a condition in its offer. The trial court denied relief, and the appellate court affirmed, relying on "the trial court's implied finding of inexcusable lack of due care on the part of BMW's counsel." See § 154(b), Restatement of Contracts (Second)(1979).

Furthermore, even if the Court finds that the geographic territory is not ambiguous, it is still an unreasonable restriction. Plaintiff relies upon Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223 (11th Cir. 2009), in alleging that prohibiting competition throughout the entire U.S. is reasonable. However, Proudfoot is so factually distinguishable that its holding should not be applied to the instant case. In Proudfoot, an employee of a management consulting firm, who worked in Britain, serviced a territory located in the U.S. and Canada and the employee traveled to projects located in Canada and the U.S. Id. at 1227-28. The Proudfoot Court held that prohibiting competition throughout the U.S. and Canada was reasonable.

There are numerous Florida cases discussing whether a geographic area identified in a non-compete agreement is enforceable. The general rule is that the geographic scope of the restriction should only be as broad enough to protect the legitimate business interests of the employer. See, e.g., Open Magnetic Imaging v. Nieves-Garcia, 826 So. 2d 415, 418 (Fla. 3d DCA 2002) (limiting the non-compete to the county in which the employee worked for the employer). Plaintiff does not allege where its customers are located, where Olsen or Rodriguez

provided services to customers, or any other reason to justify prohibiting competition throughout the entire U.S.. Thus, Plaintiff's proposed injunction precluding Olsen and Rodriguez from competing anywhere in the U.S. is extremely overbroad.

If the Court finds that the non-compete provisions in the Employment Agreements are valid and enforceable, it is respectfully submitted that the Court should blueline the Employment Agreement to specify a reasonable geographic location. See § 542.335(1)(c), Fla. Stat. (2016).

### III. Plaintiff will not suffer an irreparable injury if a preliminary injunction is not entered.

A showing of irreparable injury is an indispensable condition of injunctive relief. Siegel, 234 F.3d at 1176. With regard to Rodriguez, Plaintiff has not sufficiently alleged how it will suffer an irreparable injury without an injunction against Rodriguez. (See Doc. 41, ¶57).

With regard to Olsen, Plaintiff simply alleges, in a wholly conclusory fashion, that Olsen is able to use Plaintiff's unspecified confidential, trade secret information against Plaintiff. (See Doc. 41, ¶58). Again, Plaintiff has not alleged what confidential or trade secret information Plaintiff has to protect. Plaintiff does not allege or establish via affidavit that Plaintiff has used, or is likely in the future going to use, any alleged confidential information. See Dyer, 667 So. 2d at 965 n.2. Plaintiff alleges that Plaintiff has lost one unspecified customer, without alleging how the customer was allegedly "lost". This is patently insufficient to demonstrate that Plaintiff is likely to suffer irreparable injury. Thus, Plaintiff has failed to meet its burden.

Moreover, "where the harm to the moving interest has [allegedly] already occurred, that harm is neither imminent nor irreparable at law and is not the appropriate subject matter for injunctive relief." Alabama v. U.S. Army Corps of Engineers, 424 F. 3d 1117, 1134 (11th Cir.

2005). Therefore, to the extent that Plaintiff's claim for irreparable harm is based on a loss of customers or some other act which has already occurred, injunctive relief is inappropriate.[3]

### IV. Olsen and Rodriguez will both suffer an economic hardship if a preliminary injunction is entered.

if an injunction is entered against Olson and Rodriguez, they will be unable to continue to earn an income in their chosen profession. This will require them to seek alternative employment, most likely in a profession or career for which neither is properly qualified. For these reasons, the Restrictive Covenant should not be enforced.

### V. The public interest favors this Court not entering a preliminary injunction.

Plaintiff's Motion is nothing more than an attempt to stifle valid any competition in an open marketplace. In the event that injunctive relief is granted to Plaintiff, the public interest will be harmed insofar as Repairify will have been successful in eliminating valid competition and will limit the choice available to consumers.

### VI. Plaintiff first breached its contracts with Olsen and Rodriguez and therefore cannot enforce the non-compete.

Under Florida law, upon a breach of an employment agreement by the employer, the employee is excused from complying with any non-compete provisions of the employment agreement. Northern Trust Investments, N.A. v. Domino, 896 So. 2d 880, 881-82 (Fla. 4th DCA 2005); Popular Bank of Fla. v. R.C. Asesores Financieros, 797 So. 2d 614, 622 (Fla. 3d DCA 2001); Troup v. Heacock, 367 So. 2d 691 (Fla. 1st DCA 1979); Seaboard Oil Co. v. Donovan, 99 Fla. 1296, 1305 (Fla. 1930); In the Matter of Walter W. Thomas, Debtor, 51 B.R. 653, 654 (M.D. Fla. 1985); see also Benemerito & Flores, M.D.'s P.A. v. Roche, 751 So. 2d 91, 93-94 (Fla. 4th DCA 1999); Bradley v. Health Coalition, Inc., 687 So. 2d 329 (Fla. 3d DCA 1997) (superseded by statute on other grounds as stated in Am. II Elecs., Inc. v. Smith, 830 So. 2d 906 (Fla. 2d

---

[3] Defendants are not admitting that Plaintiff has lost any customers due to any acts of the Defendants.

DCA 2002)); Cordis Corp. v. Prooslin, 482 So. 2d 486, 490 (Fla. 3d DCA 1986); Hustad v. Edwin K. Williams & Co., 321 So. 2d 601, 603 (Fla. 4th DCA 1975). In the instant case, Olsen has a defense that Plaintiff was the first party to breach the Employment Agreement. (See Olsen Aff. ¶29-58). Plaintiff terminated Olsen's employment without cause and for unlawful reasons. (Id.). As such, Plaintiff was the first party to breach the Employment Agreement and therefore cannot now seek to enforce the Employment Agreement.

It is well settled under Florida law that a breach of the contract by one of the parties thereto allows the nonbreaching party to terminate his own performance and bring litigation for damages. In Hospital Mortgage Group v. First Prudential Dev. Corp., 411 So. 2d 181 (Fla. 1982), the Supreme Court adopted the Restatement (Second) of Contracts' position, holding that "the nonbreaching party is relieved of its duty to tender performance and has an immediate cause of action against the breaching party." 411 So. 2d at 182; Restatement (Second) of Contracts § 253 (1979); see also Poinsettia Dairy Prods., Inc. v. Wessel Co., 166 So. 306 (Fla. 1936) (same); Accord Victoriana Building, LLC v. Ft. Lauderdale Surgical Center, LLC, 166 So. 3d 861 (Fla. 4th DCA 2015) (holding that the trial court properly determined that the landlord first breached the lease and that the tenant was therefore excused from any further obligation to perform under the lease); Ryan v. Landsource Holding Co., 127 So. 3d 764, 767 (Fla. 3d DCA 2013) ("If one party to an agreement has breached the agreement, the other party's failure to continue with the agreement is not considered a default of the contract." (citation and internal quotation marks omitted)).

Further, it is well-settled general contract law that a party in default of its contractual obligations may not avail itself of affirmative relief under that contract. Jackson v. Riley, 427 So. 2d 255 (Fla. 5th DCA 1983); Cheezem Dev. Corp. v. Intracoastal Sales & Service, Inc., 336

18

So. 2d 1210 (Fla. 2d DCA 1976); Chatlos v. Morse Auto Rentals, Inc., 183 So. 2d 854 (Fla. 3d DCA 1966); Posik v. Layton, 695 So. 2d 759 (Fla. 5th DCA 1997); Reinhart v. Miller, 548 So. 2d 1176 (Fla. 4th DCA 1989); accord Hollander v. K-Site 400 Associates, 630 So. 2d 1153 (Fla. 3d DCA 1994). This is because the first party's failure to perform excuses the other party from subsequently performing. See Hospital Mortgage Group v. First Prudential Dev. Corp., 411 So. 2d 181 (Fla. 1982); see also Popular Bank v. R.C. Asesores Financieros, 797 So. 2d 614, 622 (Fla. 3d DCA 2001); Reinhart v. Miller, 548 So. 2d 1176 (Fla. 4th DCA 1989); Gaylis v. Caminis, 445 So. 2d 1063 (Fla. 3d DCA 1984). Since Plaintiff first breached the Employment Agreement, Plaintiff cannot now enforce it.

**VII.    Alternatively, if this Court finds that Plaintiff is entitled to a preliminary injunction, Defendants respectfully request that this Court require Plaintiff to post an injunction bond in an amount sufficient to cover all of Defendants' costs and damages, including attorneys' fees, in the event it is later determined that the preliminary injunction was wrongfully issued.**

Damages recoverable for wrongfully obtaining an injunction are generally limited to the amount of the injunction bond absent evidence that the injunction was obtained maliciously or in bad faith. Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So. 2d 1018 (Fla. 1989). The amount of the injunction bond generally serves as a ceiling for the amount of damages obtainable for a wrongfully issued injunction. Town of Davie v. Sloan, 566 So. 2d 938 (Fla. 4th DCA 1990). A reasonable attorney's fee for securing the dissolution of an injunction is an element of damages recoverable on the bond, along with court costs. See, e.g., Town of Davie v. Sloan, 566 So. 2d 938, 939 (Fla. 4th DCA 1990) (holding that the amount of an injunction bond was the ceiling on damages for a wrongfully issued injunction, including attorneys' fees and costs); Accord Montville v. Mobile Med. Indus., Inc., 855 So. 2d 212, 215 (Fla. 4th DCA 2003). Charles Olsen makes an annual salary of $85,000.00 (Olsen Aff. ¶76). and has an ownership

interest in AirPro, which will suffer as a result of the entry of an injunction. (Olsen Aff. ¶76). In addition, Wilfredo Rodriguez makes an annual salary of $60,000.00. (Rodriguez Aff. ¶40). Therefore, if this Court is inclined to enter an injunction against Defendants Olsen or Rodriguez, the required bond amount must be sufficient enough to compensation them for their annual salaries as well as attorneys' fees and costs, during the period of time from the entry of the injunction through the trial and appellate periods.

## Conclusion

For the foregoing reasons, this Court should deny Plaintiff's Motion.

**HEEKIN, MALIN & WENZEL, P.A.**

By: /s/ *T. Geoffrey Heekin*
T. Geoffrey Heekin, Esquire
Florida Bar No. 328448
Primary Email:    gheekin@jax-law.com
Secondary Email: rwallace@jax-law.com
                  service@jax-law.com
Austin T. Hamilton, Esquire
Florida Bar No. 0099431
Primary Email:    ahamilton@jax-law.com
Secondary Email: lcohen@jax-law.com
P.O. Box 477
Jacksonville, FL 32201
Telephone No.: 904-355-7000
Facsimile No.: 904-355-0266
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished via email transmission on this 11th day of January, 2017, to Michael E. Demont (mdemont@smithhulsey.com), James Bolling (jbolling@smithhulsey.com), and Allan Wulbern (awulbern@smithhulsey.com), 225 Water Street, Suite 1800, Jacksonville, FL 32202.

/s/ Austin T. Hamilton
Attorney