**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

REPAIRIFY, INC., doing business as Collision
Diagnostic Services, a Delaware corporation,

      Plaintiff,

v.                                     Case No.: 3:16CV984-J-34JRK

AIRPRO DIAGNOSTICS, LLC, a Florida limited
liability company, CHARLES OLSEN, and
WILFREDO RODRIGUEZ,

      Defendants.
_____/

AIRPRO DIAGNOSTICS, LLC, a Florida limited
liability company,

      Counterclaimant,

v.

REPAIRIFY, INC., doing business as Collision
Diagnostic Services, a Delaware corporation,

      Counter-Defendant.

_____/

**<u>AIRPRO DIAGNOSTICS, LLC'S ANSWER & AFFIRMATIVE DEFENSES TO
PLAINTIFF'S SECOND AMENDED COMPLAINT & AMENDED COUNTERCLAIM
AGAINST REPAIRIFY, INC.</u>**

Defendant, AirPro Diagnostics, LLC, by and through its undersigned counsel, hereby

answers Plaintiff's Second Amended Complaint as follows:

1.      Without knowledge and therefore denied.

2.      Admitted for jurisdictional purposes only, otherwise denied.

3.      Admitted for jurisdictional purposes only, otherwise denied.

4.      Without knowledge and therefore denied.

5.     Admitted for jurisdictional purposes only, otherwise denied.

6.     Denied.

7.     Admitted for jurisdictional purposes only, otherwise denied.

8.     Admitted for jurisdictional purposes only, otherwise denied.

9.     The documents attached as Exhibits 1 and 2 speak for themselves.  Without knowledge as to the remainder of this paragraph and therefore the remainder of this paragraph is denied.

10.     The document attached as Exhibit 3 speaks for itself.  The remainder of this paragraph is denied.

11.     Without knowledge and therefore denied.

12.     The document attached as Exhibit 4 speaks for itself.  Without knowledge as to the remainder of this paragraph and therefore the remainder of this paragraph is denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     The document attached as Exhibit 5 speaks for itself.  The remainder of this paragraph is denied.

19.     The document attached as Exhibit 5 speaks for itself.  The remainder of this paragraph is denied.

20.     The document attached as Exhibit 5 speaks for itself.  The remainder of this paragraph is denied.

21. The document attached as Exhibit 5 speaks for itself. The remainder of this paragraph is denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied

28. Denied.

29. Denied.

30. Denied.

31. Denied.

## Count One
### (False Advertising in Violation of 15 U.S.C. §§1125, et. Seq. against AirPro)

Defendant AirPro Diagnostics has filed a Motion to Dismiss towards Count One. Therefore, an answer to Count One is not required at this time.

## Count Two
### (Violation of Florida's Deceptive and Unfair Trade Practices Act § 501.204, *et. Seq.* Fla. Stat. against AirPro)

Defendant AirPro Diagnostics has filed a Motion to Dismiss towards Count Two. Therefore, an answer to Count Two is not required at this time.

## Count Three
### (Reformation of the Olsen Employment Agreement)

Count Three purports to be a cause of action against Defendant Charles Olsen. Therefore, an answer by Defendant AirPro is not required. However, to the extent Count Three requires an answer by Defendant AirPro, Defendant AirPro specifically denies each allegation of Count Three.

## Count Four
### (Breach of Contract (Non-Compete Provisions as allowed by §542.33 and 542.335, Fla. Stat.) against Olsen)

Count Four purports to be a cause of action against Defendant Charles Olsen. Therefore, an answer by Defendant AirPro is not required. However, to the extent Count Four requires an answer by Defendant AirPro, Defendant AirPro specifically denies each allegation of Count Four.

## Count Five
### (Tortious Interference with Repairify's contractual relationship with Olsen—against AirPro)

63. In response to the allegations of paragraphs 1 through 31, 49 through 57 and 59 through 62, Defendant AirPro repeats and realleges its previous responses to the foregoing paragraphs.

64. Denied.

65. Denied.

66. Denied.

67. Denied. Defendant AirPro specifically denies that Plaintiff has the ability to recover attorneys' fees for this cause of action.

**Count Six**
**(Reformation of the Rodriguez Employment Agreement)**

Count Six purports to be a cause of action against Defendant Wilfredo Rodriguez. Therefore, an answer by Defendant AirPro is not required. However, to the extent Count Six requires an answer by Defendant AirPro, Defendant AirPro specifically denies each allegation of Count Six.

**Count Seven**
**(Breach of Contract (Non-Compete Provisions as allowed by §§542.33 and 542.335, Fla. Stat.) against Rodriguez)**

Count Seven purports to be a cause of action against Defendant Wilfredo Rodriguez. Therefore, an answer by Defendant AirPro is not required. However, to the extent Count Seven requires an answer by Defendant AirPro, Defendant AirPro specifically denies each allegation of Count Seven.

**Count Eight**
**(Tortious Interference with Repairify's contractual relationship with Rodriguez—against AirPro)**

88.     In response to the allegations of paragraphs 1 through 17, 24, 31, 69 through 78, and 80 through 87, Defendant AirPro repeats and realleges its previous responses to the foregoing paragraphs.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

Defendant, AirPro Diagnostics, LLC, has retained the undersigned attorneys to represent it in this matter and is obligated to pay them a reasonable fee. Defendant, AirPro Diagnostics, LLC, is entitled to recover its attorneys' fees and costs from the Plaintiff in this matter pursuant to, among other things, 15 U.S.C. § 1117(a) and Section 501.2105, Fla. Stat.

## AFFIRMATIVE DEFENSES

Defendant, AirPro Diagnostics, LLC, by and through its undersigned attorneys and pursuant to Rule 12 of the Federal Rules of Civil Procedure, hereby submits the following Affirmative Defenses to the allegations presented in Plaintiff's Complaint:

### First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief may be granted as a matter of law.

### Second Affirmative Defense

Plaintiff's claims are barred to the extent the statements that Plaintiff complains of constitute nothing more than mere opinions and/or puffery.

### Third Affirmative Defense

Plaintiff's purported claims are barred in whole or in part because Plaintiff itself has unclean hands as described in the Counterclaim.

### Fourth Affirmative Defense

To the extent Defendant is found to be at fault (which such fault is expressly denied), Plaintiff's claims are barred by the doctrine of *in pari delicto* because Plaintiff is equally at fault by making false and materially misleading statements and advertisements as described in the Counterclaim.

### Fifth Affirmative Defense

Plaintiff's claims are barred because Plaintiff has not suffered an injury.

### Sixth Affirmative Defense

Plaintiff's claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") are barred because Plaintiff cannot demonstrate that it has actual damages as is necessary to recover on a claim under FDUTPA.

### Seventh Affirmative Defense

Plaintiff's tort claims are barred to the extent the actions of Defendant of which Plaintiff complains were legal in and of themselves.

### Eighth Affirmative Defense

Plaintiff's tort claims are barred because Defendant did not owe a duty to Plaintiff and Defendant is entitled to conduct its business and legal affairs in the manner it determined to be in its own best interests without regard to the effects on Plaintiff.

### Ninth Affirmative Defense

Plaintiff's tort claims are barred because the alleged contract between Plaintiff and Defendant Olsen was terminable at will.

### Tenth Affirmative Defense

Plaintiff's tort claims are barred because AirPro did not interfere with the alleged contract between Plaintiff and Defendant Olsen. Plaintiff terminated Defendant Olsen before AirPro had contact with Defendant Olsen regarding employment.

## <u>AMENDED COUNTERCLAIM AGAINST REPAIRIFY, LLC</u>

AirPro Diagnostics, LLC, hereby sues Repairify, Inc., and states as follows:

1.      AirPro Diagnostics, LLC ("AirPro Diagnostics") is a Florida Limited Liability company having its principal place of business in Duval County, Florida.

2.      Repairify, Inc., which does business as Collision Diagnostic Services ("CDS") (Repairify, Inc., and CDS are hereinafter collectively referred to as "Repairify/CDS") is a Delaware corporation having its principal place of business in Plano, Texas. Repairify/CDS also has an office located in Duval County, Florida, and regularly conducts business out of said office within the State of Florida.

3.      This is an action for: (i) false and misleading advertising under the Lanham Act (15 U.S.C. §1125); and (ii) violation of Florida's Unfair and Deceptive Trade Practices Act (§501.201, *et. Seq.*, Fla. Stat.).

4.      This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. §1121, and 28 U.S.C. § 1331 and 1367. The Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship amongst the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      The Court has personal jurisdiction over Repairify/CDS at least because Repairify/CDS has committed acts in the State of Florida giving rise to the claims asserted herein; Repairify/CDS has an office in Duval County, Florida; and Repairify/CDS performs business within the State of Florida.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to AirPro Diagnostic's claims occurred in this District.

7.     AirPro Diagnostics is in the business of performing remote scanning of computer modules in automobiles and other vehicles.

8.     AirPro Diagnostics markets and sells services via a product known as the "AirPro" (hereinafter the "AirPro Device").

9.     The AirPro Device is a scan tool with original equipment manufacturer ("OEM") validated interfaces connected directly to the vehicle.  AirPro scan tool software packages (both aftermarket and OEM) are loaded in the AirPro Device at the vehicle.  The AirPro Device uses multiple software packages appropriate for the job at hand.  OEM software is used for module programming or when needed, directly connected to the vehicle and operated remotely by certified technicians.  AirPro also uses third-party high level scan tool software that meets the functionality levels of what is available from the OEMs in most cases.  When OEM scan tool software is needed for procedures not covered by the third-party software, AirPro Diagnostics downloads the appropriate OEM factory scan tool software directly from OEM service sites in accordance with OEM scan tool software user license agreements.

10.     Repairify/CDS is also in the business of remote scanning of computer modules in automobiles and other vehicles.

11.     Repairify/CDS markets and sells different products that can be connected to a scan tool or a vehicle for internet protocol conversion, to wit:  1) the AsTech; and 2) the AsTech II (When referred to collectively the AsTech and the AsTech2 will be identified as the "AsTech Product").

12.     Repairify/CDS markets the AsTech Product as being a product, which includes services that provide up-to-date remote scanning and programming using OEM factory scan tools.

13.     The AsTech Product is not a scan tool; rather, it is an interface to convert vehicle communication protocols to internet protocol (an interpreter). The AsTech Product is configured to connect to a scan tool or to a vehicle for internet protocol conversion. Two Astechs are required for a remote connection paired by a separate server to a vehicle with a scan tool in a separate location. The scan tool is in a location other than at the vehicle (e.g., CDS/Repairify's offices in Jacksonville, Florida, or in Plano, Texas). Scan tool functions are reduced to the ability of the AsTech Product to convert, transmit, and re-convert the data within the scan tool's parameters. The AsTech Product also limits scan tool functionality to only the protocols developed for conversion (e.g., CAN data and 9141 protocols only). The J1850 vehicle communication protocol is not currently functioning on the AsTech Product and has not been functioning on the AsTech Product, which therefore limits the scan tool coverage. A true and correct copy of the CDS/Repairify coverage chart is attached hereto as Exhibit "A".

14.     As for OEM scan tools, Repairify/CDS uses OEM scan tools connected to another Astech Product (located at Repairify/CDS' office), which is then paired by a server to a separate Astech Product, which is located at the vehicle. Repairify/CDS also uses aftermarket scan tools in this same manner.

15.     On the other hand, AirPro uses OEM validated and approved J2534-1 and J2534-2 compliant interfaces and software packages as needed.

16.     Scan tools can generally be classified into two categories, to wit: OEM scan tools; and aftermarket scan tools. An OEM scan tool is specific and limited to the particular manufacturer's line of vehicles (e.g., Ford IDS, GM GDS2, Toyota Techstream, etc.). An OEM scan tool covers all functions available for all of its models as designed by OEM vehicle manufacturers to meet warranty repair guidelines set by the OEM. On the other hand, the

capabilities and functions of aftermarket scan tools vary widely depending on the tool. An aftermarket scan tool covers multiple lines of vehicles. Some aftermarket scan tools are limited to "Asian, Domestic or European vehicles". Interestingly, the highest level aftermarket scan tools can sometimes exceed the capabilities of an OEM tool. Aftermarket scan tools are usually lacking full OEM capabilities or coverage for the current model year of production (2017 Model year coverage is pending or limited), depending on the tool. Most current scan tools (OEM and aftermarket) are computer programs that run on a PC, laptop or tablet operating system with a vehicle interface to connect to an automobile. Some of these are self-contained handheld units. Many OEM scan tools and aftermarket scan tools are developed and distributed by the same companies (e.g., Bosch, Helm, Drew Technologies, OTC, etc.). OEMs hire companies to build their scan tool interfaces and programs to the OEM's specifications.

17.     AirPro Diagnostics differentiates itself in the marketplace because its AirPro Device is an actual scan tool (located at the vehicle) which connects directly to the vehicle and utilizes both OEM and aftermarket software, as engineered and intended by the scan-tool manufacturers.

18.     While Repairify/CDS advertises that its AsTech Product can provide true OEM scan tool functionality, this is not true. The AsTech Product is NOT a scan tool and thus cannot provide true OEM scan tool functionality. Instead, the AsTech Product uses two interfaces and connects through a server over the internet, as described above. A true and correct copy of the 313 patent, which explains the AsTech technology is attached hereto as Exhibit "B".

19.     The only way to provide true OEM scan tool functionality is to use OEM scan tool software and OEM validated interfaces connected directly to a vehicle.

20.     Repairify/CDS advertises that the AsTech Product uses OEM scan tools but omits critical information, namely, the limitations the AsTech Product places on the OEM scan tools. The OEM scan tool functions are limited to less than designed when used with additional conversions and interfaces such as those of the AsTech Product.

21.     Specifically, scan tool functions are reduced to less than originally designed when converted and transmitted in the manner used by AsTech.  The ability of the  AsTech Product  or any other product to convert, transmit, and reconvert automotive protocol data within an automotive scan tool's timing parameters along with inherent differences between automotive protocol communication requirements and TCP/IP communication standards causes this reduction in the scan tool's function. For example, this is caused by time delays and the inherent fluctuation of internet transmission of traffic.  Also, DATA packets can be dropped, re-arranged, reversed or delivered out of order causing skewed, inaccurate or incomplete data from a scan tool to a vehicle.  This is typically referred to as "packet loss".

22.     Packet loss is typically caused by network congestion. When content arrives for a sustained period at a given router or network segment at a rate greater than it is possible to send through, then there is no other option than to drop packets. If a single router or link is constraining the capacity of the complete travel path or of network travel in general, it is known as a bottleneck.  Packet loss can be caused by several other factors that can corrupt or lose packets in transit, such as radio signals that are too weak due to distance or multi-path fading (in radio transmission), faulty networking hardware, or faulty network drivers. Packets are also intentionally dropped by normal routing routines (such as Dynamic Source Routing in ad hoc networks) and through network dissuasion technique for operational management purposes.

23.     The AsTech Product's specific limitations include, but are not limited to: Powertrain control module programming; certain occupant seat calibrations and other procedures requiring a road test with a scan tool connected to the vehicle (such as Honda/Acura's 22mph road test requirement); erroneous results from lost connections, packet loss or AsTech resets; programming of certain airbag control modules; and incomplete vehicle communication protocol development, specifically, J1850 automotive communication protocol (which is the communication protocol used on pre-2014 Corvette, Colorado, GMC Canyon and most pre-2008 GM and Ford Products).

24.     Repairify/CDS competes directly with AirPro Diagnostics and offers a competing yet inferior product, to wit: the AsTech Product.

25.     Repairify/CDS has engaged in false and misleading advertising of the AsTech Product which is designed to mislead customers, or at least has the effects of misleading customers.  Examples of Repairify's false and misleading advertising include the following:

a. Repairify/CDS has misled customers into believing that the AsTech Product hooks up to only OEM scan tools.  Specifically, a video of a panel discussion was published on YouTube on or around August 16, 2016, (https://www.youtube.com/watch?v=wimSOExMxNs&sns=em) titled "Insurers And OEMs Discuss Vehicle Diagnostic Scans In Collision Repair", which was hosted by Mike Anderson, who at that time was an undisclosed board member and shareholder/owner of Repairify/CDS.  A true and correct copy of the Repairify Holdings, LLC Members Schedule (in redacted form) and select Portions of the Operating Agreement for Repairify Holdings, LLC is attached hereto as Composite Exhibit "C".  During that panel discussion, Mike Anderson

specifically stated (beginning around 41 minutes and 45 seconds into the video) that the AsTech Product "hooks up to only OEM scan tools". Mr. Anderson asked Mr. Doug Kelly, the CEO of CDS (the d/b/a of Repairify, Inc.) and one of the sitting panel members whether that statement was correct and Mr. Kelly agreed and/or did not disavow that statement. As of February 20, 2017, this video has been viewed 21,961 times. This statement by Mr. Anderson and adopted/ratified by Mr. Kelly on behalf of Repairify/CDS is not a true statement because CDS was at the time utilizing both OEM <u>and</u> aftermarket scan tools connected to the AsTech Product. Specifically, CDS's own disclaimer provides the following statement: "While every attempt will be made to use the factory scan tool, <u>at times an aftermarket tool will be utilized.</u> The CDS master technician will discuss this decision with the shop technician." (<u>See</u> CDS disclaimer attached hereto as Exhibit "D" (emphasis added)).

b. During the same NACE panel discussion in August 2016, Mike Anderson refers to a 2007 Audi Q7 with bumper cover damage that was scanned with an "Audi Factory Scan tool" that uncovered an issue with the navigation system approximately 7 months prior to the loss. (<u>See</u> the YouTube video starting at approximately 2:40 minutes) Mr. Anderson repeats emphatically "using an Audi Factory Scan Tool!" This story (Case study) has been used and repeated for over 2 years by CDS/Repairify and Mike Anderson to show the value of freeze frame data found performing pre-and post-repair scans. Never before had the story been told as "using an Audi Factory Scan-Tool." This statement on behalf of CDS/Repairify is false and misleading. The vehicle referred to was scanned in

Jacksonville, Florida, using the AsTech and an aftermarket scan tool called the AutoLogic. The scan and report was completed by Chuck Olsen in 2013, during a demonstration at Brumos Collision Center in Jacksonville, Florida, where Lonnie Margol was present at the time. CDS did not own an Audi Factory scan tool at that time. This story has been modified to emphasize and promote CDS'/Repairify's false claims that it uses only OEM factory scan tools, and that OEM factory scan tools are the only way to perform pre-and post repair scans. A copy of the scan report presentation from Mike Anderson's previous presentation around July 2015 is attached hereto as Exhibit "E".

c. During a subsequent Pre- and Post-scanning panel discussion headed up by Mike Anderson in Toronto Canada, on January 27, 2017, the same OEM only scan tool statement was made and acknowledged as true by Dan Young who is CDS's Vice President of marketing and a panel participant. Mike Anderson, again, did not disclose his ownership of, or board member status with, CDS/Repairify. A copy of the agenda for the ccif meeting is attached hereto as Exhibit "F". A true and correct copy of Mike Anderson's biography is attached hereto as Exhibit "G".

d. Repairify/CDS has also misled customers into believing that the AsTech Product can perform true OEM tool functionality. Specifically, on the front-page of www.astech.com, Repairify/CDS states: "The asTech offers OEM scans that identify any and all existing issues within the vehicle." A true and correct copy of this statement is attached hereto as Exhibit "H". This statement is literally false and/or misleading because a consumer is led to believe that the AsTech Product provides true OEM scan tool functionality. True OEM scan tool functionality can

only be obtained by using true OEM scan tool software and OEM validated interfaces. This is acknowledged by Repairify in its disclaimer, which is attached hereto as Exhibit "D", and states: "While every attempt is made to provide accurate information on the Scan Report, the asTech™ device may not, in every circumstance, return the same information that would result from a scan performed with an OE scan tool proximate to the vehicle." "Variations between [vehicles] according to the make model and trim level, may limit the information provided by the asTech™ device."

e. Repairify/CDS also makes the following statement on its website: "When a vehicle is brought in for repair, it is impossible to determine the scope of repairs just by looking at the vehicle. It also can't be known if a problem is serious or minor until the vehicle is connected to an OEM Factory scan tool. A convenient, cost effective way of knowing what is wrong with the vehicle is to incorporate the use of the asTech™2 device which connects the vehicle, through the OBD, to OEM Factory scan tools and the certified master technicians at CDS." (emphasis added). A true and correct copy of this statement is attached hereto as Exhibit "I". This statement is literally false and/or misleading because a consumer is led to believe that the AsTech Product provides true OEM scan tool functionality. True OEM scan tool functionality can only be obtained by using true OEM scan tool software and OEM validated interfaces directly connected to a vehicle. This statement is also false and misleading because it makes a consumer believe that Repairify/CDS only uses factory scan tools, which is false. (See Exhibit "J" ("With their patented Astech2 device" [CDS/Repairify] "applies OEM factory

level or advanced A/M [(aftermarket)] scan tools to perform diagnostic scanning and procedures such as reprogramming or initialization.").

f.  Repairify/CDS has also made false statements about its technicians.  Specifically, in the May 2016 edition of PropertyCasualty360.com's Claims Magazine at page 25, a true and correct copy of which is attached hereto as Exhibit "J", Repairify/CDS is identified as having "Auto Service Excellence (ASE) and OEM-certified technicians on staff, the majority being master technicians."  A link to this article is posted on Repairify/CDS's website athttp://astech.com/news/see-the-astech-device-featured-in-claims-magazine/. In order to qualify as a "master technician" a person must have all ASE automotive technician certifications. However, this is literally a false statement because in April 2016, Repairify/CDS did not have any ASE or OEM Master Certified Technicians on its staff.

g.  Repairify has also made false statements representing that CDS/Repairify will comply with all OEM specifications.  (See Exhibit "D" ("All work performed by CDS will be in accordance with OEM specifications and defaults. This includes, but is not limited to, any repairs, calibrations, integrations, programming and set points as indicated by the OEM by way of their designated sources of such information.").  However, Repairify/CDS does not follow Honda and Acura's OEM procedures relating to seat calibrations that require a 22 m.p.h. road test during seat calibration.  Repairify/CDS performs this procedure while the vehicle is on a lift or on jack stands rather than physically on the road as is required.  A true and correct copy of this Honda Acura Job Aid is attached hereto as Exhibit "K".

CDS/Repairify was informed of this Honda calibration procedure that CDS/Repairify had been doing incorrectly and was not possible to do correctly with the current AsTech equipment and configuration. Charles Olsen sent the text message attached hereto as Exhibit "L" to Mike Anderson who is a current CDS/Repairify board member and industry spokesperson to alert CDS/Repairify of the potential safety risks to vehicle owners and passengers by performing occupant detection calibrations on a lift or on jack stands to satisfy a 22 mph road test during calibration. This was done in good faith to assist Repairfy/CDS. The Honda and Acura job aid document specifically states: "Operating the vehicle on a lift or on safety stands (instead of driving the vehicle) will not properly load the body structure, and may negatively affect the calibration procedure."

26. Repairfy/CDS's statements are literally false, but at a minimum are misleading to consumers.

27. Additionally, before the AirPro Device came to the market, Repairify/CDS admitted that the AsTech Product used after-market scan tools. This was specifically advertised at page 25 of Exhibit "J", which states that the AsTech Product used "OEM factory level or advanced A/M [(after-market)] scan tools to perform diagnostic scanning . . . ." See Exhibit "J".

28. However, after the AirPro Device was introduced to the market in or around June of 2016, Repairify/CDS filed suit against AirPro Diagnostics and then changed its position and has since advertised that the AsTech Product only uses OEM factory scan tools, as reflected in the YouTube video. Supra.

29. Repairify/CDS advertises that the AsTech Product only uses OEM factory scan tools in a deliberate attempt to persuade customers to purchase the AsTech Product and not the

AirPro Device, and in a deliberate attempt to make potential customers believe that the AirPro Device is inferior to the AsTech Product because it does not use OEM factory scan tools.

30. Repairify/CDS has taken deliberate actions to try to persuade potential customers not to purchase the AirPro Device. For example, the instant action filed by Repairify/CDS was a deliberate attempt to try to prevent the presence of the AirPro device in the marketplace and an attempt to try to put AirPro Diagnostics out of business.

31. Repairify/CDS has also made false statements concerning AirPro Diagnostics and the AirPro Device. Examples of Repairify/CDS's false statements include the following:

a. Repairify/CDS has informed potential customers of AirPro Diagnostics that Repairify/CDS has filed the instant lawsuit against AirPro Diagnostics and will put AirPro Diagnostics out of business. Specifically, during the NACE conference in Anaheim, California on or about August 10 to August 12, 2016, several potential customers approached Chuck Olsen and Lonnie Margol stating there were concerns that AirPro Diagnostics was infringing on the CDS patent and that AirPro Diagnostics was being sued and would ultimately be out of business.

b. Specifically, Tom Pease, an I-CAR instructor, contacted AirPro's Director of Client Services, Cathy Mills, on August 30, 2016, with information from a client of his, Gene Vincent of Advance Autobody 11 in Bluffton SC, who told him that CDS/Repairify employees at the AsTech booth at the NACE conference stated that there were legal issues between CDS and AirPro Diagnostics and that AirPro Diagnostics would therefore not be around long.

c. Also on August 30, 2016, at around 1:30 p.m., Cathy Mills called Gene Vincent who stated he had gone to the CDS/Repairify booth on the floor at NACE and had

asked for Cathy Mills. He mentioned to the lady at the booth that he had been talking to Cathy Mills. The lady at the CDS/Repairify booth asked him to hold on, she wanted someone else to hear this. She called a gentleman over and she asked Mr. Vincent to repeat himself.  Mr. Vincent again said that he was looking for Cathy Mills. The gentleman on behalf of CDS/Repairify proceeded to tell Mr. Gene Vincent that there were a lot of legal problems, infringement rights being violated and other big words that went over Gene Vincent's head. Mr. Vincent explained to them that he did not want to get into all of that and that all he wanted was to find out about AirPro Diagnostics.

d.   Another example is a call Cathy Mills received on February 14, 2017, around 11:00 a.m., from a shop prospect named Barry Wimbush at A and I Body Shop. He told Cathy that he was told by CDS/Repairify that AirPro could not scan 2017 vehicles and wanted to know if that was true.

e.   Repairify/CDS has also informed potential customers of AirPro Diagnostics that the AirPro device does not use OEM factory scan tools.  Specifically, Multiple prospective clients approached Lonnie Margol and Chuck Olsen during the SEMA show in Las Vegas on or about November 3, 2016, and informed them that they had been told by representatives of CDS/Repairify that AirPro Diagnostics did not, and could not, use OEM scan tools. This was misleading, false, and confusing to AirPro Diagnostics' potential clients.

f.   Repairify/CDS has further informed potential customers of AirPro Diagnostics that the AirPro Device is different from the AsTech Product because the AirPro Device uses after-market scan tools. This statement clearly misleads customers

into believing that the AsTech Product does not use after-market scan tools and therefore the AsTech Product is a superior product. These statements also disparage the developers of the most capable and advanced aftermarket scan-tools and scan-tool software as not being sufficient or capable of performing pre-and post-scans, even though CDS has been using aftermarket tools. (Aftermarket scan tools have been a staple and a reliable choice for mechanical repair shops and computerized emission controls for over 20 years. Over the last 5 years, aftermarket scan tool capabilities have advanced along with other diagnostic tool technology.)

32.     Repairify/CDS's statements, advertising, and false allegations are having a detrimental effect on AirPro Diagnostics', Lonnie Margol's and Chuck Olsen's reputation in the collision repair market and industry.   This has and continues to directly impair AirPro Diagnostics' sales and marketing of the AirPro Device and supporting services.

33.     AirPro Diagnostics conservatively estimates that it will be damaged in excess of $10,000,000.00 should Repairfy/CDS be able to continue to mislead customers into choosing the AsTech Product instead of the AirPro Device,  and to discredit the AirPro Device based upon Repairify/CDS's false advertising and false and misleading statements as identified above.

34.     All conditions precedent to the bringing of this action have been performed, excused or waived.

**COUNT I - FALSE ADVERTISING**
**IN VIOLATION OF 15 U.S.C. §§1125, *et. Seq.***

35.     AirPro Diagnostics repeats and realleges paragraphs 1 through 34, above as if fully set forth herein.

36.     Repairify/CDS has made materially false advertising statements in interstate commerce, including false statements regarding the capabilities of the AsTech Product, and the capabilities of the AirPro Device, both of which are offered, sold, leased and/or used in interstate commerce.

37.     Repairify/CDS's statements regarding the capabilities of the AsTech Product and the AirPro Device are literally false. To the extent not literally false, these statements are materially misleading to consumers.

38.     Repairify/CDS's statements are at a minimum misleading because the statements include false information and/or omit critical information regarding the capabilities of the AsTech Product and the AirPro Device.

39.     These false and/or misleading statements have the capacity to deceive, and have deceived, AirPro Diagnostic's customers and potential customers.

40.     Repairify/CDS's statements regarding the capabilities of the AsTech Product are material to customers' purchasing decisions, at least because the breadth of scanning and programming that can be performed by a scanning product is an important factor consumers rely upon in making purchasing decisions.

41.     Repairify/CDS's false advertising has injured AirPro Diagnostics, and is likely to continue to harm AirPro Diagnostics at least through the loss of actual and potential customers for the AirPro Device, and through diminishing AirPro Diagnostic's reputation in the collision repair industry.

42.     As a direct and proximate result of Repairify/CDS's false advertising, AirPro Diagnostics has been substantially and irreparably harmed. Unless restrained by the Court, Repairify/CDS will cause further irreparable injury to AirPro Diagnostics. AirPro Diagnostics

has no adequate remedy at law. AirPro Diagnostics has a substantial likelihood of success on the merits and is entitled to injunctive relief enjoining Repairify/CDS, its agents and employees, and all persons acting in concert or participation with it, from engaging in further false advertising and unfair trade practices. The injury to AirPro Diagnostics outweighs any possible harm to Repairify/CDS from entry of an injunction and the public interest to prevent false advertising will be served by entry of an injunction.

43.     AirPro Diagnostics is entitled to recover the damages Repairify/CDS's false advertising have caused AirPro Diagnostics, including attorneys' fees and costs it has sustained and will sustain, and any gains, profits and advantages obtained by Repairify/CDS as a result of its acts of false advertising as alleged above. At present, the amount of such damages, gains, profits, and advantages is conservatively estimated to be in excess of $10,000,000.00, but the exact amount of damages will be established according to proof at trial.

**WHEREFORE**, AirPro Diagnostics, LLC, respectfully requests that this Honorable Court enter a judgment against Repairify, Inc., as follows:   (1) find that Repairify, Inc., has engaged in false advertising in violation of 15 U.S.C. § 1125, *et seq.*; (2) issue a preliminary and permanent injunction enjoining Repairify, Inc., and its respective affiliates, agents, attorneys, employees, officers, servants, assigns and successors, and all persons, firms, and corporations acting in concert with either of them, from making false or misleading statements regarding (a) functionality and capabilities of the AsTech Product and (b)functionality and capabilities of the AirPro Device; (3) order Repairify, Inc., to render a full and complete accounting to AirPro Diagnostics for its respective profits and other advantages received from its violation of the law; (4) enter judgment for AirPro Diagnostics against Repairify, Inc., for all damages suffered by AirPro Diagnostics and for any profits or gains by Repairify, Inc., attributable to its violation of

15 U.S.C. §§1125, *et seq.* pursuant to 15 U.S.C. §1117(a); (5) award AirPro Diagnostics all of its costs relating to this action, including reasonable attorneys' fees and costs pursuant to, among other things, 15 U.S.C. §1117(a); (6) award AirPro Diagnostics pre-judgment interest and post-judgment interest; and (7) grant AirPro Diagnostics any and all further relief that the Court deems just and proper.

## COUNT II – VIOLATION OF THE
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

44.     AirPro Diagnostics repeats and realleges paragraphs 1 through 34, above as if fully set forth herein.

45.     Repairify/CDS has made materially false advertising statements in interstate commerce including in the State of Florida, regarding the capabilities of the AsTech Product and the AirPro Device, both of which are offered, sold, leased and/or used in interstate commerce. Repairify/CDS advertises and distributes the AsTech Product nationally though its website (http://astech.com/get-an-astech/) and has specifically solicited customers in at least the State of Florida.

46.     The statements regarding the AsTech Product are false and misleading because the statements include false information and/or omit critical information regarding the capabilities of the AsTech Product and the AirPro Device.

47.     Repairify/CDS knew or should have known that its statements regarding the capabilities of the AirPro Device and the AsTech Product were false.  These misrepresentations were intentionally used to induce consumers to rely on them and purchase the AsTech Product instead of the AirPro Device.

48.     Repairify/CDS's false advertising has injured AirPro Diagnostics, and is likely to continue to harm AirPro Diagnostics at least through the loss of actual and/or potential customers for the AirPro Device.

49.     As such, Repairify/CDS's willful, wanton and malicious false and misleading advertising statements violate standards of fairness and deception set forth in Florida Statutes, including at least Section 817.41, Florida Statutes.

50.     Additionally, Repairify/CDS's false and misleading statements violate standards of fairness and deception set forth in the federal statutes, including at least the Lanham Act.  As discussed above, the Repairify/CDS's advertising is false and misleading.  These statements have the capacity to deceive, and have deceived customers of AirPro Diagnostics.

51.     Repairify/CDS's false statements are material to customers' purchasing decisions, at least because the breadth of scanning and programming that can be performed by a scanning product is an important factor consumers rely on in making purchasing decisions.

52.     As a direct and proximate result of Repairify/CDS's violation of Section 501.204, Florida Statutes, AirPro Diagnostics has been substantially and irreparably harmed.  Airpro Diagnostics is aggrieved by Repairify/CDS's unfair or deceptive acts or practices for the purposes of FDUTPA.  Unless restrained by the Court, Repairify/CDS will cause further irreparable injury to AirPro Diagnostics.  AirPro Diagnostics has no adequate remedy at law.

53.     AirPro Diagnostics has a substantial likelihood of success on the merits and is entitled to injunctive relief enjoining Repairify/CDS, its agents and employees, and all persons acting in concert or participation with it, from engaging in further false advertising and deceptive and unfair trade practices.  The injury to AirPro Diagnostics outweighs any possible harm to

Repairify/CDS from entry of an injunction and the public interest to prevent false advertising will be served by entry of an injunction.

54.    AirPro Diagnostics is entitled to recover from Repairify/CDS the damages Repairify/CDS's unfair trade practices have caused AirPro Diagnostics, including attorneys' fees and costs it has sustained and will sustain, and any gains, profits and advantages obtained by Repairify/CDS as a result of its acts of false advertising and deceptive and unfair practices as alleged above.  At present, the amount of such damages, gains, profits, and advantages is conservatively estimated to be in excess of $10,000,000.00, but the exact amount of damages will be established according to proof at trial.

**WHEREFORE**, AirPro Diagnostics, LLC, respectfully requests that this Honorable Court enter a judgment against Repairify, Inc., as follows:  (1) find that Repairify, Inc., has violated Florida's Deceptive and Unfair Trade Practices Act; (2) issue a preliminary and permanent injunction enjoining Repairify, Inc., and its respective affiliates, agents, attorneys, employees, officers, servants, assigns and successors, and all persons, firms, and corporations acting in concert with either of them, from making further false or misleading statements regarding (a) functionality and capabilities of the AsTech Product, and (b)functionality and capabilities of the AirPro Device; (3) order Repairify, Inc., to render a full and complete accounting to AirPro Diagnostics for its respective profits and other advantages received from its violation of the law; (4) enter judgment for AirPro Diagnostics against Repairify, Inc., for all damages suffered by AirPro Diagnostics and for any profits or gains by Repairify, Inc., attributable to its violation of the law; (5) award AirPro Diagnostics its costs and disbursements relating to this action, including reasonable attorneys' fees and costs; (6) award AirPro

Diagnostics pre-judgment interest and post-judgment interest; and (7) grant AirPro Diagnostics

any and all further relief that the Court deems just and proper.

**Demand for Jury Trial**

AirPro Diagnostics, LLC, hereby demands a trial by jury on all issues so triable.

**HEEKIN LITIGATION GROUP**

By: */s/ Austin T. Hamilton*
T. Geoffrey Heekin, Esquire
Florida Bar No. 328448
Primary Email:    gheekin@jax-law.com
Secondary Email:    rmiller@jax-law.com
Austin T. Hamilton, Esquire
Florida Bar No. 0099431
Primary Email:    ahamilton@jax-law.com
Secondary Email:    rwallace@jax-law.com
    service@jax-law.com

P.O. Box 477
Jacksonville, FL 32201
Telephone No.: 904-355-7000
Facsimile No.: 904-355-0266

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy hereof has been furnished via email transmission on this 28th day of February, 2017, to:

SMITH HULSEY & BUSEY
Michael E. Demont
James A. Bolling
Allan E. Wulbern
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(mdemont@smithhulsey.com)
(jbolling@smithhulsey.com)
(awulbern@smithhulsey.com)

/s/ Austin T. Hamilton
Attorney