

Schedule B

REPAIRIFY HOLDINGS, LLC
Members Schedule
(as of August 31, 2016)

| | Series A Preferred Units | Series B Preferred Units | Series C Preferred Units | Class A Common Units | Class B Common Units |
|---|---|---|---|---|---|
| [illegible] | [illegible] | - | - | [illegible] | - |
| [illegible] | - | [illegible] | - | [illegible] | - |
| Mike Anderson | - | - | - | - | [illegible] |
| Douglas Kelly | [illegible] | - | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | - | - | [illegible] | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| Jake Rodenroth | - | - | - | - | [illegible] |
| Daniel Young | - | - | [illegible] | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| [illegible] | - | - | - | - | [illegible] |
| Totals | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

Notice Information:

[illegible]

Douglas Kelly
[illegible]

Mike Anderson
[illegible]

EXHIBIT "C"

<u>Exhibit A</u>

Form of Parent LLC Agreement
*(see attached)*

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**REPAIRIFY HOLDINGS, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY**

**Dated as of July [•], 2015**

THE TRANSFER OF THE SECURITIES REPRESENTED BY THIS INSTRUMENT IS SUBJECT TO THE CONDITIONS SPECIFIED IN THIS LIMITED LIABILITY COMPANY AGREEMENT AMONG THE MEMBERS OF THE ISSUER.

THE SECURITIES REPRESENTED BY THIS INSTRUMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE SOLD OR TRANSFERRED IN ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION THEREUNDER. THE SECURITIES REPRESENTED BY THIS INSTRUMENT MAY BE SUBJECT TO ONE OR MORE EQUITY GRANT AGREEMENTS, AS MAY BE AMENDED FROM TIME TO TIME, BY AND BETWEEN THE ISSUER AND ONE OR MORE OF THE ISSUER'S EQUITYHOLDERS.

EXHIBIT "C"

TABLE OF CONTENTS

**ARTICLE I Definitions** ..... 1
- 1.1 Definitions ..... 1
- 1.2 Other Definitional Provisions ..... 9

**ARTICLE II Organization of the Company** ..... 10
- 2.1 Formation ..... 10
- 2.2 Name ..... 10
- 2.3 Registered Office; Agent ..... 10
- 2.4 Term ..... 11
- 2.5 Purposes and Powers ..... 11

**ARTICLE III Management of the Company** ..... 11
- 3.1 Board of Directors ..... 11
- 3.2 Committees of the Board ..... 13
- 3.3 Officers ..... 14
- 3.4 Fiduciary Duties ..... 16
- 3.5 Performance of Duties; Liability of Directors and Officers ..... 17
- 3.6 Indemnification ..... 17

**ARTICLE IV Members; Voting Rights** ..... 18
- 4.1 Meetings of Members ..... 18
- 4.2 Voting Rights ..... 19
- 4.3 Registered Members ..... 19
- 4.4 Limitation of Liability ..... 19
- 4.5 Withdrawal; Resignation ..... 19
- 4.6 Death of a Member ..... 19
- 4.7 Authority ..... 19
- 4.8 Outside Activities ..... 19
- 4.9 No Effect on Lending Relationship ..... 20

**ARTICLE V Units; Membership** ..... 20
- 5.1 Units Generally ..... 20
- 5.2 Authorization and Issuance of Units ..... 20
- 5.3 Issuance of Units ..... 21
- 5.4 New Members from the Issuance of Units ..... 21
- 5.5 Pre-Emptive Rights ..... 21

**ARTICLE VI Capital Contributions and Capital Accounts** ..... 23
- 6.1 Capital Contributions ..... 23
- 6.2 Capital Accounts ..... 23
- 6.3 Negative Capital Accounts ..... 25
- 6.4 No Withdrawal ..... 25
- 6.5 Loans From Members ..... 25
- 6.6 Status of Capital Contributions ..... 25

KE 36057350

**ARTICLE VII Distributions** ..... 25
- 7.1 Generally ..... 25
- 7.2 Discretionary Distributions ..... 26
- 7.3 Tax Advances ..... 26
- 7.4 Withholding Taxes ..... 27

**ARTICLE VIII Allocations** ..... 27
- 8.1 Allocations of Profits and Losses ..... 27
- 8.2 Regulatory and Special Allocations ..... 27
- 8.3 Curative Allocations ..... 29
- 8.4 Tax Allocations ..... 29

**ARTICLE IX Elections; Reports and Financial Statements** ..... 30
- 9.1 Generally ..... 30
- 9.2 Tax Status ..... 30
- 9.3 Reports ..... 30
- 9.4 Tax Elections ..... 30
- 9.5 Tax Controversies ..... 30
- 9.6 Waiver of Section 18-305 of the Delaware Act ..... 30
- 9.7 Financial Statements and Confidentiality ..... 31
- 9.8 Code Section 83 Safe Harbor Election ..... 32

**ARTICLE X Dissolution and Liquidation** ..... 32
- 10.1 Dissolution ..... 32
- 10.2 Liquidation ..... 33

**ARTICLE XI Transfer of Units; Approved Company Sale** ..... 34
- 11.1 Restrictions ..... 34
- 11.2 General Restrictions on Transfer ..... 35
- 11.3 Procedures for Transfer ..... 35
- 11.4 Legend ..... 36
- 11.5 Limitations ..... 36
- 11.6 Approved Company Sale ..... 36

**ARTICLE XII Miscellaneous Provisions** ..... 38
- 12.1 Notices ..... 38
- 12.2 Governing Law ..... 38
- 12.3 No Action for Partition ..... 39
- 12.4 Headings and Sections ..... 39
- 12.5 Amendments ..... 39
- 12.6 Interpretation ..... 39
- 12.7 Binding Effect ..... 39
- 12.8 Counterparts; Email and Facsimile ..... 39
- 12.9 Severability ..... 39
- 12.10 Remedies ..... 40
- 12.11 Business Days ..... 40
- 12.12 Waiver of Jury Trial ..... 40

EXHIBIT "C"

12.13 No Strict Construction ....................................................40
12.14 Entire Agreement and Incorporation by Reference ....................40
12.15 Parties in Interest ....................................................40
12.16 Initial Public Offering ....................................................40
12.17 Mergers and Consolidations ....................................................41
12.18 Venue and Submission to Jurisdiction ....................................41
12.19 Further Assurances ....................................................42

**EXHIBITS:**

Exhibit A Form of Joinder to Limited Liability Company Agreement

**SCHEDULES:**

Schedule A Officers of the Company as of July [•], 2015
Schedule B Members Schedule as of July [•], 2015
Schedule C Trust Beneficiaries

EXHIBIT "C"

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF REPAIRIFY HOLDINGS, LLC

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement") dated as of ___, 2015 of Repairify Holdings, LLC, a Delaware limited liability company (the "Company"), is by and among the Members (as herein defined).

WHEREAS, as of the date hereof KI Remarketing Investment Holdings, LLC, a Delaware limited liability company (the "KI Remarketing") was the sole member of the Company;

WHEREAS, KI Remarketing was party to that certain Limited Liability Company Agreement of the Company, dated as of May 13, 2015 (the "Prior Agreement");

WHEREAS, KI Remarketing, RFI 2015 Group, LLC ("RFI") and the Company are parties to that certain Investors Contribution Agreement, dated as of the date hereof (the "Investors Contribution Agreement"), pursuant to which KI Remarketing contributed all of the membership interests of the Company to RFI (the "KIRIH Contribution");

WHEREAS, pursuant to the terms of the Prior Agreement, RFI desires to amend and restate the Prior Agreement in its entirety as set forth herein;

WHEREAS, pursuant to the terms of the Investors Contribution Agreement, the Company has issued 9,000,000 Series A Preferred Units and 9,000,000 Class A Common Units (as such terms are defined herein) to RFI;

WHEREAS, AES Technologies, LLC, a Florida limited liability company ("AES") and the Company are parties, among other parties, to that certain Asset Purchase and Contribution Agreement, dated as of June 3, 2015, as amended (the "Purchase Agreement"), pursuant to which, as of the date hereof, the Company has issued 4,750,000 Series B Preferred Units and 1,588,235 Class A Common Units (as such terms are defined herein) to AES; and

WHEREAS, RFI and AES represent all of the Members of the Company as of the execution and delivery of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein made and other good and valuable consideration, the Members hereby agree as follows:

## ARTICLE I
## Definitions

**1.1 Definitions.** The following terms used in this Agreement shall have the following meanings (unless otherwise expressly provided in this Agreement):

"Acceptance Period" has the meaning set forth in Section 5.5(a).

"Adjusted Capital Account Deficit" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Taxable Year, after giving effect to the following adjustments:

(i) Crediting to such Capital Account any amount which such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulation Sections 1.704-1(b)(2)(ii)(*c*), 1.704-2 (g)(1), and 1.704-2(i); and

(ii) Debiting to such Capital Account the items described in Treasury Regulation Section 1.704-1(b)(2)(ii)(*d*)(*4*), (*5*) and (*6*).

"Adjusted Taxable Income" of a Member for a Fiscal Year (or portion thereof) with respect to Units held by such Member means the federal taxable income (or alternative minimum taxable income, as the case may be) allocated by the Company to the Member with respect to such Units (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided that such taxable income (or alternative minimum taxable income, as the case may be) shall be computed (i) as if all excess taxable losses and excess taxable credits allocated with respect to such Units were carried forward (taking into account the character of any such loss carryforward as capital or ordinary), and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"AES" has the meaning set forth in the Recitals.

"AESP" means Automatic Electronic Solution Providers, LLC.

"Affiliate" means, when used with reference to a specified Person, any Person that directly or indirectly controls or is controlled by or is under common control with the specified Person. As used in this definition, "control" (including, with its correlative meanings, "controlled by" and "under common control with") shall mean possession, directly or indirectly, of power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise). With respect to any Person who is an individual, "Affiliates" shall also include any member of such individual's Family Group.

"Approving Members" has the meaning set forth in Section 11.6(a).

"Approved Company Sale" has the meaning set forth in Section 11.6(a).

"Bankruptcy" means, with respect to a Member, that (i) such Member has (A) made an assignment for the benefit of creditors; (B) filed a voluntary petition in bankruptcy; (C) been adjudged bankrupt or insolvent, or had entered against such Member an order of relief in any bankruptcy or insolvency proceeding; (D) filed a petition or an answer seeking for such Member any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation or filed an answer or other pleading admitting or failing to contest the material allegations of a petition filed against such Member in any proceeding of such nature; or (E) sought, consented to, or acquiesced in the appointment of a trustee, receiver or liquidator of such Member or of all or any substantial part of such Member's

EXHIBIT "C"

properties; (ii) 120 days have elapsed after the commencement of any proceeding against such Member seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation and such proceeding has not been dismissed; or (iii) 90 days have elapsed since the appointment without such Member's consent or acquiescence of a trustee, receiver or liquidator of such Member or of all or any substantial part of such Member's properties and such appointment has not been vacated or stayed or the appointment is not vacated within 90 days after the expiration of such stay.

"Book Value" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a) The initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b) The Book Value of each Company asset shall be adjusted to equal its respective gross Fair Market Value, as of the following times: (i) the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a *de minimis* Capital Contribution; (ii) the distribution by the Company to a Member of more than a *de minimis* amount of Company assets (other than cash) as consideration for all or part of its Units unless the Board determines that such adjustment is not necessary to reflect the relative economic interests of the Members in the Company; and (iii) the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(*g*);

(c) The Book Value of a Company asset distributed to any Member shall be the Fair Market Value of such Company asset as of the date of distribution thereof;

(d) The Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted basis of such Company asset pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section § 1.704-1(b)(2)(iv)(*m*); provided, that Book Values shall not be adjusted pursuant to this subparagraph (d) to the extent that an adjustment pursuant to subparagraph (b) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this subparagraph (d); and

(e) If the Book Value of a Company asset has been determined or adjusted pursuant to subparagraphs (a), (b) or (d) above, such Book Value shall thereafter be adjusted to reflect the Depreciation taken into account with respect to such Company asset for purposes of computing Profits and Losses.

"Capital Account" means the capital account maintained for a Member pursuant to Section 6.2.

"Capital Contribution" means any contribution to the capital of the Company in cash or property by a Member, whenever made.

"Certificate of Formation" means the Certificate of Formation (as herein defined), as such Certificate of Formation may be amended, supplemented or restated from time to time.

"Class A Common Unit" means a Unit having the rights and obligations specified with respect to a "Class A Common Unit" in this Agreement.

"Class A Director" has the meaning set forth in Section 3.1(a).

"Class B Director" has the meaning set forth in Section 3.1(a).

"Code" means the United States Internal Revenue Code of 1986, as amended from time to time.

"Company Minimum Gain" has the meaning set forth for "partnership minimum gain" in Treasury Regulation Section 1.704-2(d).

"Company's Notice of Intention to Sell" has the meaning set forth in Section 5.5(a).

"Delaware Act" means the Delaware Limited Liability Company Act, as the same may be amended from time to time.

"Depreciation" means, for each Fiscal Year, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such Fiscal Year, except that if the Book Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such Fiscal Year, Depreciation shall be an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Board.

"Eligible Equityholder" means the holder of at least 40,000 Class A Common Units.

"Estimated Tax Amount" of a Member for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Board. In making such estimate, the Board shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding Taxable Year and such other adjustments as in the reasonable business judgment of the Board are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"Equity Equivalents" has the meaning set forth in Section 5.5(a).

"Excess Amount" has the meaning set forth in Section 7.3.

EXHIBIT "C"

"Fair Market Value" of any asset as of any date means the purchase price which a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's-length transaction, as determined in good faith by the Board based on such factors as the Board, in the exercise of its reasonable business judgment, considers relevant.

"Family Group" means, when used with reference to a specified individual Person, (i) such Person's spouse and descendants (whether natural or adopted) and any trust solely for the benefit of such Person and/or such Person's spouse and/or descendants or (ii) any company, limited liability company or other entity which is controlled solely by such Person or the Person and such Person's spouse.

"Fiscal Year" means the Company's Taxable Year.

"GCL" means the General Corporation Law of the State of Delaware, as the same may be amended from time to time.

"Indemnification Conditions" has the meaning set forth in Section 3.6.

"Independent Third Party" means any Person other than the Kinderhook Fund or any Affiliate of the Kinderhook Fund.

"Initial Public Offering" has the meaning set forth in Section 12.16(a).

"Investment Preferred Capital Value" for each Investment Preferred Unit means one dollar ($1.00).

"Investment Preferred Unit" means each Series A Preferred and Series B Preferred Unit having the rights and obligations specified with respect to an "Investment Preferred Unit" in this Agreement.

"Investment Preferred Unpaid Yield" means, for any Investment Preferred Unit at any time, the amount equal to the excess, if any, of (i) the aggregate Investment Preferred Yield accrued on such Investment Preferred Unit prior to such time, over (ii) the aggregate amount of all distributions that are attributable solely to such Investment Preferred Unit's Investment Preferred Yield and that are made by the Company in respect of such Investment Preferred Unit pursuant to Section 7.2(a), with respect to Series A Preferred Units, and Section 7.2(c), with respect to Series B Preferred Units, prior to such time.

"Investment Preferred Unreturned Capital Amount" means, for any Investment Preferred Unit at any time, the amount of the Investment Preferred Capital Value for such Investment Preferred Unit, reduced by the aggregate amount of all distributions made by the Company in respect of such Investment Preferred Unit pursuant to Section 7.2(b), with respect to Series A Preferred Units, and Section 7.2(d), with respect to Series B Preferred Units, prior to such time.

"Investment Preferred Unreturned Redemption Value" means, for any Investment Preferred Unit at any time, the sum of (x) the amount of the then Investment Preferred

Unreturned Capital Amount and (y) the amount of the then Investment Preferred Unpaid Yield, in each case, for such Investment Preferred Unit.

"Investment Preferred Yield" on any Investment Preferred Unit means the amount accruing in respect of such Investment Preferred Unit (commencing with respect to such Investment Preferred Unit on the date the Company issues or issued such Investment Preferred Unit) on a quarterly basis, at 10.0% per annum (compounded quarterly), on (i) the Investment Preferred Unreturned Capital Amount for such Investment Preferred Unit during such calendar quarter (or portion thereof) plus (ii) the Investment Preferred Unpaid Yield on such Investment Preferred Unit for all prior calendar quarters (or portions thereof) as of the end of the immediately preceding calendar quarter. In calculating the amount of any distribution to be made during a calendar quarter, the portion of the Investment Preferred Yield on any Investment Preferred Unit for such portion of such calendar quarter elapsing before such distribution is made will be taken into account.

"Investors Contribution Agreement" has the meaning set forth in the Recitals.

"IPO Newco" has the meaning set forth in Section 12.16(a).

"Joinder" means a joinder to this Agreement substantially in the form of Exhibit A attached hereto.

"KI Remarketing" has the meaning set forth in the Recitals.

"KIRIH Contribution" has the meaning set forth in the Recitals.

"Kinderhook Fund" means Kinderhook Capital Fund III, L.P. or an Affiliate of the Kinderhook Fund.

"Liquidating Trust" means the liquidating trust created pursuant to the Liquidating Trust Agreement for AES and AESP by and among AES, AESP and Brent C. Williams, as Liquidating Trustee, attached to the Plan of Liquidation and to be dated as of the confirmation date of the Plan of Liquidation.

"Losses" means items of loss and deduction of the Company determined according to Section 6.2(b).

"Majority in Voting Interest" means, at any time, a Member or Members which own at least a majority of the votes of all of the Voting Units outstanding at such time.

"Majority of the Board" means, at any time, a combination of any of the then Directors constituting at least a majority of the votes of all of the Directors who are then elected and qualified.

"Member" means each Person identified on the Members Schedule as of the date hereof who is a party to or is otherwise bound by this Agreement and each Person who may hereafter be admitted as a Member in accordance with the terms of this Agreement. The

EXHIBIT "C"

Members shall constitute the "members" (as that term is defined in the Delaware Act) of the Company.

"Member Minimum Gain" with respect to each Member Nonrecourse Debt, means the amount of Company Minimum Gain (as determined according to Treasury Regulation Section 1.704-2(d)(1)) that would result if such Member Nonrecourse Debt was treated as a nonrecourse liability, determined in accordance with Treasury Regulation Section 1.704-2(i)(3).

"Member Nonrecourse Debt" has the meaning set forth in Treasury Regulation Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"Member Nonrecourse Deduction" has the meaning set forth in Treasury Regulation Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"Members Schedule" has the meaning set forth in Section 5.1.

"Membership Interest" means the interest acquired by a Member in the Company, including such Member's right (based on the type and class and/or series of Unit or Units held by such Member), as applicable, (A) to a distributive share of Profits, Losses, and other items of income, gain, loss, deduction and credits of the Company, (B) to a distributive share of the assets of the Company, (C) to vote on, consent to or otherwise participate in any decision of the Members, and (D) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the Delaware Act.

"Nonrecourse Deductions" has the meaning set forth in Treasury Regulation Section 1.704-2(b), substituting the term "Company" for the term "partnership" as the context requires.

"Nonvoting Units" means the Series A Preferred Units and the Series B Preferred Units.

"Notice" has the meaning set forth in Section 9.8(a).

"Person" means any individual, corporation, partnership, limited liability company, trust, joint venture, governmental entity or other unincorporated entity, association or group.

"Plan of Liquidation" means the Joint Plan of Liquidation of AES and AESP.

"Preferred Units" means a Unit having the rights and obligations specified with respect to "Preferred Units" in this Agreement (including the Investment Preferred Units).

"Prior Agreement" has the meaning set forth in the Recitals.

"Pro Rata Share" means the percentage ownership set forth opposite each Trust Beneficiary's name on Schedule C attached hereto, subject to adjustment from time to time

based upon a certificate signed by the trustee of the Liquidating Trust and submitted to an officer of the Company.

"Profits" means items of income and gain of the Company determined according to Section 6.2.

"Purchase Agreement" has the meaning set forth in the Recitals.

"Quarterly Estimated Tax Amount" of a Member for any calendar quarter of a Fiscal Year means the excess, if any of (i) the product of (A) ¼ in the case of the first calendar quarter of the Fiscal Year, ½ in the case of the second calendar quarter of the Fiscal Year, ¾ in the case of the third calendar quarter of the Fiscal Year, and 1 in the case of the fourth calendar quarter of the Fiscal Year and (B) the Member's Estimated Tax Amount for such Fiscal Year over (ii) all distributions previously made during such Fiscal Year to such Member.

"Regulatory Allocations" has the meaning set forth in Section 8.2(e).

"Repairify" means Repairify, Inc., a Delaware corporation and wholly owned subsidiary of the Company.

"RFI" has the meaning set forth in the Recitals.

"RFI Member" means any Member that is RFI or a member of RFI or such RFI member's Affiliate.

"Securities Act" means the Securities Act of 1933, as amended, and the rules promulgated thereunder.

"Series A Preferred Unit" means a Unit having the rights and obligations specified with respect to a "Series A Preferred Unit" in this Agreement.

"Series B Preferred Unit" means a Unit having the rights and obligations specified with respect to a "Series B Preferred Unit" in this Agreement.

"Shortfall Amount" has the meaning set forth in Section 7.3.

"Specified Person" means RFI and any of its respective affiliates, including Kinderhook Industries, LLC, a Delaware limited liability company (other than the Company and its subsidiaries), and each of their respective managers, directors, officers, equity holders, partners, members, employees, representatives and agents (including any of their representatives serving on the Board or on the board of directors or board of managers of the Company's subsidiaries or as an officer of the Company or any of its subsidiaries) and any other Person that the Board determines should be designated as a Specified Person.

"Tax Advances" means any distributions made by the Company pursuant to Section 7.3 hereof.

EXHIBIT "C"

"Tax Amount" of a Member for a Fiscal Year means the product of (A) the Tax Rate for such Fiscal Year and (B) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Units.

"Tax Matters Partner" has the meaning set forth in Code Section 6231.

"Tax Rate" of a Member for any period means the highest marginal blended federal, state and local income tax rate applicable for such period to an individual residing in New York, New York, taking into account for federal income tax purposes, the deductibility of state and local taxes. If higher, federal Tax Advances will be based on federal alternative minimum taxable income (taking into account solely Company items and the principles contained in the definitions of Adjusted Taxable Income) and rates (using the highest marginal federal alternative minimum tax rate applicable to an individual).

"Taxable Year" means the Company's taxable year ending on December 31 (or part thereof in the case of the Company's first and last taxable year), or such other year as is (i) required by Section 706 of the Code or (ii) determined by the Board (if no year is so required by Section 706 of the Code).

"Transfer" means any direct or indirect sale, transfer, conveyance, assignment, pledge, hypothecation, gift, delivery or other disposition.

"Treasury Regulations" means the final or temporary regulations that have been issued by the U.S. Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"Trust Beneficiaries" has the meaning set forth in Section 11.1(b).

"Trust Distribution" means a distribution of Class A Common Units made from the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement.

"Unit" means a unit representing a fractional part of the Membership Interests of all of the Members and shall include all types and classes and/or series of Units; provided that any type or class or series of Unit shall have the designations, preferences and/or special rights set forth in this Agreement and the Membership Interests represented by such type or class or series of Unit shall be determined in accordance with such designations, preferences and/or special rights.

"Voting Units" means the Class A Common Units.

1.2 **Other Definitional Provisions**. Capitalized terms used in this Agreement which are not defined in this Article I have the meanings contained elsewhere in this Agreement. Defined terms used in this Agreement in the singular shall import the plural and vice versa.

## ARTICLE II
## Organization of the Company

2.1 **Formation**.

(a) The Company was formed as a limited liability company pursuant to the Delaware Limited Liability Company Act, Delaware Code, Title 6, Sections 18-101, et seq., as amended from time to time (the "Delaware Act"), by having the Certificate of Formation of the Company (the "Certificate of Formation") filed with the Secretary of State of the State of Delaware and entering into the Prior Agreement. The Certificate of Formation was prepared, executed and filed with the Secretary of State of the State of Delaware on May 13, 2015 by Cindy R. Reilly, as an "authorized person" for such purpose within the meaning of the Delaware Act, all of which is hereby authorized and ratified in all respects. This Agreement shall constitute the "limited liability company agreement" (as that term is used in the Delaware Act) of the Company. The rights, powers, duties, obligations and liabilities of the Members shall be determined pursuant to the Delaware Act and this Agreement. To the extent that the rights, powers, duties, obligations and liabilities of any Member are different by reason of any provision of this Agreement than they would be in the absence of such provision, this Agreement shall, to the extent permitted by the Delaware Act, control.

(b) Any officer of the Company as an "authorized person" within the meaning of the Delaware Act, is hereby authorized, at any time that the applicable Member(s) have approved an amendment to the Certificate in accordance with the terms hereof, to promptly execute, deliver and file such amendment in accordance with the Delaware Act.

(c) The Company shall, to the extent permissible, elect to be treated as a partnership for federal, state and local income tax purposes, and each Member and the Company shall file all tax returns and shall otherwise take all tax and financial reporting positions in a manner consistent with such treatment and no Member shall take any action inconsistent with such treatment. The Company shall not be deemed a partnership or joint venture for any other purpose.

2.2 **Name**. The name of the Company is "Repairify Holdings, LLC" or such other name or names as the Board may from time to time designate: provided, that the name shall always contain the words "Limited Liability Company", "LLC" or "L.L.C."

2.3 **Registered Office; Agent**. The Company shall maintain a registered office in the State of Delaware at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808 or at such other place within Delaware as an authorized officer of the Company may designate. The name and address of the Company's registered agent for service of process on the Company in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808 or such other agent as an authorized officer of the Company may from time to time designate.

EXHIBIT "C"

2.4 **Term**. The term of existence of the Company shall be perpetual from the date the Certificate was filed with the Secretary of State of Delaware, unless the Company is dissolved in accordance with the provisions of this Agreement.

2.5 **Purposes and Powers**. The purposes and character of the business of the Company shall be to transact any or all lawful business for which limited liability companies may be organized under the Delaware Act. The Company shall have any and all powers which are necessary or desirable to carry out the purposes and business of the Company, including the ability to incur and guaranty indebtedness, to the extent the same may be legally exercised by limited liability companies under the Delaware Act. Notwithstanding anything herein to the contrary, nothing set forth herein shall be construed as authorizing the Company to possess any purpose or power, or to do any act or thing, forbidden by law to a limited liability company organized under the laws of the State of Delaware.

## ARTICLE III
## Management of the Company

3.1 **Board of Directors**.

(a) Establishment. There is hereby established a committee (the "Board" or the "Board of Directors") comprised of natural Persons (the "Directors") having the authority and duties set forth in this Agreement. Each Director shall be designated as either a "Class A Director" or a "Class B Director". Each Class A Director shall be entitled to three votes and each Class B Director shall be entitled to one vote. Any decisions to be made by the Board shall require the approval of a Majority of the Board. Except as provided in the immediately preceding sentence, no Director acting alone, or with any other Director or Directors, shall have the power to act for or on behalf of, or to bind the Company (including as a result of each Director being a "manager" (as that term is defined in the Delaware Act) of the Company as further provided in this Section 3.1(a)). Each Director shall be a "manager" (as that term is defined in the Delaware Act) of the Company, but, notwithstanding the foregoing, no Director shall have any rights or powers beyond the rights and powers granted to such Director in this Agreement. Directors need not be residents of the State of Delaware.

(b) Powers. The business and affairs of the Company shall be managed by or under the direction of the Board. All actions outside of the ordinary course of business of the Company to be taken by or on behalf of the Company shall require the approval of a Majority of the Board.

(c) Number of Directors; Term of Office. The authorized number of each class of Directors are, as of the date hereof, two Class A Directors and four Class B Directors and, hereafter, the authorized number of each class of Directors may be increased or decreased by the Board. The Directors shall, except as hereinafter otherwise provided for filling vacancies, be elected by a Majority in Voting Interest and shall hold office until their respective successors are elected and qualified or until their earlier death, resignation or removal. As of the date hereof, the Class A Directors are Paul Cifelli and Michael Zoch and the Class B Directors are John Lindle, Rick Keister, Douglas Kelly and Mike Anderson and each such Person shall hold

office as a Director until his respective successor is elected and qualified or until his earlier death, resignation or removal.

(i) A Majority in Voting Interest may remove, with or without cause, any Director and fill the vacancy. Vacancies caused by any such removal by the Members and not filled by the Members at the meeting at which such removal shall have been made or by a Majority in Voting Interest, may be filled by a majority of the votes of the Directors then in office, although less than a quorum, and any Director so elected to fill any such vacancy shall hold office until his successor is elected and qualified or until his earlier death, resignation or removal.

(ii) A Director may resign at any time by giving written notice to that effect to the Board. Any such resignation shall take effect at the time of the receipt of that notice or any later effective time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. A vacancy caused by any such resignation or by the death of any Director or any vacancy for any other reason (including due to the authorization by the Board of a newly created directorship) and not filled by the Members may be filled by a majority of the votes of the Directors then in office, although less than a quorum, and any Director so elected to fill any such vacancy shall hold office until his successor is elected and qualified or until his earlier death, resignation or removal.

(d) Meetings of the Board. The Board shall meet at such time and at such place (either within or outside of the State of Delaware) as the Board may designate. Special meetings of the Board shall be held on the call of the Chairman (as herein defined) or any Class A Director upon at least two days (if the meeting is to be held in person) or twenty-four hours (if the meeting is to be held by telephone communications or video conference) oral or written notice to the Directors, or upon such shorter notice as may be approved by all of the Directors. Any Director may waive such notice as to himself. A record shall be maintained by the Company of each meeting of the Board.

(i) Conduct of Meetings. Any meeting of the Directors may be held in person, telephonically or by video conference.

(ii) Quorum. A Majority of the Board shall constitute a quorum of the Board for purposes of conducting business. At all times when the Board is conducting business at a meeting of the Board, a quorum of the Board must be present at such meeting. If a quorum shall not be present at any meeting of the Board, then the Directors present at the meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. A Director may vote or be present at a meeting either in person or by proxy. The Class A Directors then serving as Directors shall have the right to cast the votes of any Class A Director who is absent or unavailable at any meeting of the Board through unanimous vote of the Class A Directors present at such meeting of the Board.

EXHIBIT "C"

IN WITNESS WHEREOF, the parties hereto have caused this First Amendment to the Asset Purchase and Contribution Agreement to be executed as of the date first above written.

**AES TECHNOLOGIES, LLC**, a Florida limited liability company

By: ____________________
Name: Brent Williams
Title: Chief Restructuring Officer

**AUTOMOTIVE ELECTRONIC SOLUTION PROVIDERS, LLC**, a Florida limited liability company

By: ____________________
Name: Brent Williams
Title: Chief Restructuring Officer

**REPAIRIFY HOLDINGS, LLC**, a Delaware limited liability company

By: ____________________
Name: ____________________
Title: ____________________

**REPAIRIFY, INC.**, a Delaware corporation

By: ____________________
Name: ____________________
Title: ____________________

{34932970;2}

Signature Page to First Amendment to Asset Purchase and Contribution Agreement

IN WITNESS WHEREOF, the parties hereto have caused this First Amendment to the Asset Purchase and Contribution Agreement to be executed as of the date first above written.

**AES TECHNOLOGIES, LLC**, a Florida limited liability company

By: ____________________
Name: ____________________
Title: ____________________

**AUTOMOTIVE ELECTRONIC SOLUTION PROVIDERS, LLC**, a Florida limited liability company

By: ____________________
Name: ____________________
Title: ____________________

**REPAIRIFY HOLDINGS, LLC**, a Delaware limited liability company

By: ____________________
Name: Michael Zoch
Title: Vice President

**REPAIRIFY, INC.**, a Delaware corporation

By: ____________________
Name: Michael Zoch
Title: Vice President

Signature Page to First Amendment to Asset Purchase and Contribution Agreement

EXHIBIT "C"